[Civ. No. 25944. First Dist., Div. Two. Mar. 28, 1969.]

EMILIO GAIERA, Petitioner, v. WORKMEN'S COMPEN-SATION APPEALS BOARD, ROSALIE GAIERA et al., Respondents.

Marcus & Rucka, Maurice S. Marcus and N. Michael Rucka for Petitioner.

Everett A. Corten, Rupert A. Pedrin and Albert Sennett for Respondents.

AGEE, J.—Petitioner-applicant seeks to annul and set aside the Order Denying Reconsideration issued on July 15, 1968 by the Workmen's Compensation Appeals Board (hereafter "appeals board") following the report and recommendation of the referee with respect to applicant's Petition For Reconsideration of the referee's award theretofore made.

Preliminarily, the petitioner claims that the order of the appeals board did not comply with the provisions of Labor Code section 5908.5, which provides in pertinent part as follows: "Any decision of the appeals board . . . denying a petition for reconsideration . . . shall be made by the appeals board and not by a referee . . . and *shall state the evidence relied upon and specify in detail the reasons for the decision.*" (Italics added.)

In the instant case the order of the appeals board reads as follows: "We have considered the allegations of the Petition for Reconsideration on file herein and the contents of the Referee's Report with respect thereto. Based on our review of the record and for the reasons stated by the Referee *whose report we herewith adopt and incorporate,* It Is Ordered that said Petition for Reconsideration Be and it hereby is Denied." (Italics added.)

We have concluded that when the appeals board *denies* a petition for reconsideration, its order may incorporate and include therein the report of the referee.

We do not have the situation presented in *Evans* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 753 [68 Cal.Rptr. 825, 441 P.2d 633], wherein the appeals board issued its order *granting* reconsideration. It thereafter rescinded the referee's order allowing the reopening of the matter, without stating the evidence relied upon or detailing the reasons for its action, as required by section 5908.5.

However, where the appeals board *agrees* with the referee's report in toto, there is no commonsense reason why such report cannot be included in its order by reference thereto. To hold otherwise would simply require the appeals board to repeat in its order the same words used by the referee in his report.

### Statement of Facts

Petitioner, a 68-year-old grocery clerk, sustained injury on October, 13, 1966, in the course of a robbery of the store where

he worked when a bullet went through his cheek, jaw, base of tongue and through his neck. On June 6, 1968 findings and award issued to the effect that the injury caused 63½ percent permanent disability and that the applicant was not in need of further medical treatment to cure or relieve from the effects of the injury. On the instructions of the trial referee, the rating bureau arrived at a rating of 63½ percent disability, which did not make allowance for "blood supply to brain diminished by approximately 40% causing marked increase in reaction to toxicity of colds with right internal carotid artery occluded." In the report of the referee adopted by the board, the referee states: "This referee is of the opinion that the loss of one of a pair of arteries is not, *per se*, a ratable disability. . . ."

### Denial of Further Medical Treatment

■ Denial of further medical treatment was stated by the referee to be based upon the reports of three physicians. Dr. Gaiera, the son of petitioner, stated that petitioner's "major complaint is irremediable." Dr. Lansche stated that "No operative treatment is indicated." Dr. Etheredge stated that he did not believe that "any further vascular study nor treatment is indicated."

The referee stated that "there was no evidence of any available treatment reasonably required to cure or relieve from the effects of the injury. . . . There is no medical, including dental, evidence that the teeth should be removed either by reason of the injury herein or otherwise. In the event that medical treatment becomes reasonably required, applicant may petition to reopen." (Lab. Code, § 5804.) We find no error in this conclusion.

### Was the Permanent Disability Rating Too Low?

■ Labor Code section 4660 gives the administrative director of the board authority to adopt a rating schedule for the determination of the percentage of permanent disabilities.

The statute requires that the schedule take into consideration "the nature of the physical injury or disfigurement, the occupation of the injured employee, and his age at the time of such injury, consideration being given to the diminished ability of such injured employee to compete in an open labor market."

■ The referee's instructions to the Permanent Disability Rating Bureau are, in effect, findings of fact on these issues.

(*Fidelity & Cas. Co.* v. *Workmen's Comp. App. Bd.* (1967) 252 Cal.App.2d 327, 331 [60 Cal.Rptr. 442].)

In the instant case, the referee gave the following instruction to the rating bureau:

"A RECOMMENDED PERMANENT DISABILITY RATING IS REQUESTED BASED on the following:

"Date of Injury: 10-13-66 Age at injury: 68 Compensation rate: $20.00

"Occupation: Grocery Clerk

"Disability relative to gunshot wound of face, neck and throat:

"Paralyzed right side of tongue causing slight speech handicap and moderate interference with mastication and swallowing; numbness of right cheek between right antrum and eye; tendency for right eye to lacrimate; blood supply to brain diminished by approximately 40% causing marked increase in reaction to toxicity of colds with right internal carotid artery occluded; also rate for disability comparable to very slight neurosis."

Pursuant to the referee's request for rating, the rating bureau rated petitioner's disability for (a) his speech difficulty, (b) a slight neurosis, (c) tooth, mouth and jaw injuries, and (d) chronic lacrimation, arriving at a permanent disability rating of 63½ percent. It is to this rating that petitioner objects, contending it is too low because it did not take into account or make allowance for the loss of one of the two carotid arteries, causing the blood supply to the brain to be diminished by 40 percent.

If a party's objection is to the percentage rating itself, his recourse is to cross-examine the rating expert and to offer rebuttal evidence to show that the recommended rating is not appropriate, e.g., that the specialist has not taken into consideration all of the factors set forth in the instructions of the referee. (*Fidelity & Cas. Co.* v. *Workmen's Comp. App. Bd., supra,* 252 Cal.App.2d at p. 333.) Petitioner was afforded an opportunity to cross-examine the rating expert and to offer rebuttal evidence at a hearing on May 7, 1968. The transcript of the hearing reads as follows: "Q. Where in the rating is the disability for the right internal carotid artery occluded? A. There is nothing in the rating for that, just the factor since it did not indicate a specific disability. . . . Q. Has any weight been given whatsoever to the clause starting out with 'blood supply to the brain diminished'? A. No. It does not specifically indicate a disability. Q. Would you have given no weight in this rating to 'blood supply to brain diminished by

approximately 40% causing marked increase in reaction to toxicity of colds'? A. That is correct. Q. And you have given no weight in this rating to right internal carotid artery being occluded? A. That's right."

It appears from the record that the rating specialist did not make any allowance for the loss of one carotid artery because such a condition did not indicate any disability caused by it. He testified that he could make a nonscheduled rating based on an analogy to other parts of the rating schedule but only if there was evidence as to the disability caused by the factor, "such as inability to lift, walk, or something else, I mean, as an example." There was no such evidence.

Petitioner failed to produce any rebuttal evidence at the hearing, although Labor Code section 5704 permitted him to do so. (*Pence* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 48, 51 [45 Cal.Rptr. 12, 403 P.2d 140].)

■ "It was properly within the province of the commission [predecessor to board of appeals] to select and set forth the factors of disability which were to be the basis of the rating. . . . ■ The determination of the percentage of disability attributable to the industrial injury is a matter left to the sound discretion of the commission. [Citations.]" *Subsequent Injuries Fund* v. *Industrial Acc. Com.* (1964) 226 Cal.App.2d 136, 152 [37 Cal.Rptr. 844].)

The appeals board, in adopting the report and recommendation of the referee, has concluded that the 63½ percent disability rating arrived at by the rating bureau adequately reflects the disability of the petitioner, and that the loss of one of a pair of carotid arteries resulting in blood supply to the brain diminished by 40 percent has not produced a ratable disability. ■ The percentage of total disability sustained by an employee is a question of fact. (*New Amsterdam Cas. Co.* v. *Industrial Acc. Com.* (1951) 108 Cal.App.2d 502 [238 P.2d 1046]; *Janet* v. *Industrial Acc. Com.* (1965) 238 Cal. App.2d 491, 497 [47 Cal.Rptr. 829].) It is the province of the appeals board, as the trier of fact, to resolve finally any conflicts in the evidence on underlying issues. (*Fidelity & Cas. Co.* v. *Workmen's Comp. App. Bd., supra,* 252 Cal.App. 2d at p. 331.)

The order of the appeals board is affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied May 21, 1969.