[Civ. No. 29675. First Dist., Div. One. June 28, 1972.]

STEPHEN JOE DALEN, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD, ALLSTATE
EXCAVATORS AND DEMOLITION et al., Respondents.

 

## COUNSEL

Levy & Van Bourg and Barry J. Williams for Petitioner.

Rupert A. Pedrin, Franklin Grady and Marcel L. Gunther for Respondents.

## OPINION

**SIMS, J.**—By petition for writ of review petitioner, an applicant for disability indemnity, contends that respondent board in denying his petition for reconsideration acted without and in excess of its powers and unreasonably because the findings of fact with regard to the issue of his occupation, rating factors, percentage of his permanent disability, and the date his disability became permanent and stationary are not supported by substantial evidence. He also complains that the appeals board's decision denying his petition for reconsideration failed to state the evidence upon which the board relied and to specify in detail the reasons for the decision as required by section 5908.5 of the Labor Code. A writ of review was issued to examine the question of whether the evidence sustained the rating awarded petitioner.

It is concluded that the board erred in that his percentage of permanent disability is predicated upon an occupation and rating factors which are not sustained by substantial evidence. Petitioner's contention that the period for payment of temporary disability benefits extends through a period of rehabilitative job training unilaterally undertaken is rejected. Although the order of the commission procedurally complies with the requirements of Labor Code section 5908.5 by referring to the referee's report, the facts contained in the latter do not support the award as made. The order denying reconsideration must be annulled and the case must be remanded to the Workmen's Compensation Appeals Board for further proceedings to determine the proper percentage of permanent disability.

### I

In his application filed January 22, 1968 the petitioner alleged he was injured while employed as a "Demolition-wrecker-truck driver." "Compensation at proper rate" was noted among the areas of disagreement. The employer and carrier in an answer dated November 24, 1969 denied the occupation as alleged, "Pending further information." At the original hearing on January 23, 1970, "Occupation" was listed as one of the issues.

In a report dated November 13, 1969, Dr. Gordon, an examining physician, refers to petitioner as a "28-year-old male construction laborer and demolition worker." He found that petitioner's disability would prevent him from performing his previous work as "a construction laborer."

In his summary of the evidence at a hearing on April 20, 1970, the referee stated, "APPLICANT testified that at the time of his injury he had been doing demolition work for Allstate Demolition for six months. This work was tearing down buildings, taking out wiring, beams, etc. They used heavy tools such as bars and hammers. It required working on roofs, tearing off the roofing and roof structures, standing on window ledges, on top of walls, and beams, and balance was crucial. Sometimes he had handholds when walking on beams and walls, and sometimes he did not. The work involved climbing, sometimes with ladders and sometimes without. The demolition trucks had high sides 13 feet high, and sometimes he had to climb on these to work with the load." He later added, ". . . applicant testified that his work involved driving truck one third of the time and his best estimate would be that one third of the time was spent working off the ground." The foregoing correctly summarizes petitioner's testimony which is set forth at length in the report and recommendation of the referee on the petition for reconsideration.

Although petitioner sought a rating as a heavy construction worker working at high level work sites, the referee requested a rating on the basis of an occupational classification of "House wrecker," which automatically fell within the category of a general unskilled laborer.[1] His injuries were described as found in the objective factors and measurements in Dr. Gordon's report of November 13, 1969 and in subjective symptoms as related by the petitioner.[2] The rating specialist returned a rating of 48¼ percent amounting to 193 weeks of disability payments at the rate of $52.50 per week.

Petitioner moved to strike the recommended rating and for new instructions to the rating bureau which would either categorize petitioner's occu-

---

[1] The Schedule for Rating Permanent Disabilities promulgated pursuant to the provisions of subdivision (b) of section 4660 of the Labor Code provides in pertinent part in the list of occupations and occupational group numbers: ["OCCUPATION"] "HOUSE WRECKER" ["INDUSTRY"] "CONST." ["GROUP NUMBER"] "1."

[2] "Subjective factors: Left lower extremity pain requiring 15-20 minutes rest after standing 2 hours or walking 4 blocks or lifting or carrying of moderate weight. Moderate to severe pain in left foot on stepping on sharp or irregular objects. Slight to moderate pain in left ankle in cold weather. Must descend stairs one step at a time. Precluded from walking on rough ground more than a short distance. Minimal to slight low back pain at end of day or on repetitive bending. Ankle brace required."

pation as similar to a structural ironworker, or give the rating bureau the petitioner's testimony concerning his occupation. In the alternative, he sought cross-examination of the rating specialist.

The rating specialist was cross-examined on November 5, 1970. He disclosed an arithmetical error which decreased the rating to 47¾ percent. His further testimony was correctly summarized by the referee as follows: ". . . occupational group 1 was taken from the scheduled group for housewrecker in the rating schedule. He testified as to the duties generally of Group 1 occupations as follows: 'Laborer—heavy—unskilled in any particular. [¶] Group characteristics: Heavy arduousness, stands and stoops frequently, walks short distances, may occasionally climb stairs, ramps or ladders, frequently reaches above or below shoulders, frequently lifts, carries, and handles heavy tools or materials, or swings shovel, pickax, sledge hammer, or other tool, frequently pushes and pulls heavy materials.' [¶] If the Referee gave additional facts as to occupational duties as well as the occupational title or referred to testimony on this subject, these additional occupational factors might result in a different occupational group number. . . ."

In an opinion attached to his findings and award, the referee stated, "Applicant's testimony supports the finding of occupation. . . . Permanent disability indemnity is awarded in accordance with the recommended permanent disability rating filed and served herein."

In the referee's report on the petition for reconsideration, he stated: "It is not conceivable what aggregate of duties the scheduled occupation 'house wrecker' was intended to characterize, if other than those being performed by applicant in this case."

■ "The determination of the percentage of . . . disability is, of course, left to the sound discretion of the Commission [now Board] to be exercised in view of all the circumstances. [Citations.]" (*Hines* v. *Industrial Acc. Com.* (1932) 215 Cal. 177, 188 [8 P.2d 1021]. See also *Ford Motor Co.* v. *Industrial Acc. Com.* (1927) 202 Cal. 459, 464 [261 P. 466]; *Gaiera* v. *Workmen's Comp. App. Bd.* (1969) 271 Cal.App.2d 246, 251 [76 Cal.Rptr. 656]; *Fidelity & Cas. Co.* v. *Workmen's Comp. App. Bd.* (1967) 252 Cal.App.2d 327 [60 Cal.Rptr. 442]; *W. P. Fuller & Co.* v. *Industrial Acc. Com.* (1962) 211 Cal.App.2d 9, 17 [27 Cal.Rptr. 401]; and *County of L. A.* v. *Indus. Acc. Com.* (1936) 14 Cal.App.2d 134, 136 [57 P.2d 1341].)

It is properly within the province of the board "to select and set forth the factors of disability which were to be the basis of the rating." (*Subse-*

*quent Injuries Fund* v. *Industrial Acc. Com.* (1964) 226 Cal.App.2d 136, 152 [37 Cal.Rptr. 844]. See also *Gaiera* v. *Workmen's Comp. App. Bd., supra,* 271 Cal.App.2d 246, 251.)

The criteria for rating are set forth in Labor Code section 4660 as follows: "(a) In determining the percentages of permanent disability, account shall be taken of the nature of the physical injury or disfigurement, the occupation of the injured employee, and his age at the time of such injury, consideration being given to the diminished ability of such injured employee to compete in an open labor market."

■ "It is the province of the appeals board, as the trier of fact, to resolve finally any conflicts in the evidence on these underlying issues. [Citations.]" *(Fidelity & Cas. Co.* v. *Workmen's Comp. App. Bd., supra,* 252 Cal.App.2d 327, 331. See also *Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 172 [93 Cal.Rptr. 15, 480 P.2d 967].)

"The Board's descriptions of the factors of disability in its instructions to the rating bureau constitute, in effect, findings of fact as to the nature and extent of the disability. *(Fidelity & Casualty Co.* v. *Workmen's Comp. App. Bd.* (1967) 252 Cal.App.2d 327, 331. . . .)" *(Hegglin* v. *Workmen's Comp. App. Bd., supra,* 4 Cal.3d 162, 169. See also *Gaiera* v. *Workmen's Comp. App. Bd., supra,* 271 Cal.App.2d 246, 249-250; and *Fidelity & Cas. Co.* v. *Workmen's Comp. App. Bd., supra,* 252 Cal.App.2d 327, 331.)

■ When the instructions are not supported by the evidence the recommended rating must be set aside. "Inasmuch as the rating specialist must consider no more and no less than the information provided to him by the factfinder, his recommended rating carries no weight if the factors of age, occupation or disability are subsequently altered." *(Fidelity & Cas. Co.* v. *Workmen's Comp. App. Bd., supra,* 252 Cal.App.2d 327, 333.)

■ The petitioner was entitled to show that his actual duties did not conform to the duties contemplated under the generic term "house wrecker" as found in the schedule (see Lab. Code, § 4660, subd. (b)) for rating permanent disabilities. (See *Casualty Ins. Co.* v. *Industrial Acc. Com.* (1964) 226 Cal.App.2d 748, 758-761 [38 Cal.Rptr. 364]; and cf. *Stocker* v. *Brea Grammar School District* (1932) 18 I.A.C. 32, with *Borovicka* v. *Aetna Manufacturing Company* (1953) 18 Cal. Comp. Cases 34.)

In cross-examination of the rating expert, petitioner brought out that the categorization of "house wrecker" in occupational "Group 1" placed petitioner in a group with duties which were described as less arduous than those duties which his testimony showed he was engaged in at the time of his injury, and that consideration of his actual duties might result in

placing him in an occupational group number which would produce a higher disability percentage rating.[3] While the "Group 1" description refers to a worker who "may occasionally climb stairs, ramps, or ladders" the uncontradicted testimony reflected that petitioner spent one-third of his time working off the ground, and that his work involved climbing, sometimes with ladders and sometimes without, and as well climbing on high-sided trucks used in the demolition work. The characteristics for "Group 1" contain no reference to the hazards or skill involved in petitioners working on roofs, standing on window ledges, and on top of walks and beams where balance was crucial.

Petitioner referred the referee to a 1950 schedule or outline of occupational groupings (as revised January 1, 1961) from which the rating specialist had extracted the "Group 1" characteristics. This schedule reveals that "Group 1" purports to encompass "Laborer—heavy—unskilled in any special particular," and that with "Group 2," "Laborer—light—unskilled, but some responsibility," it constitutes the generic title "Laborer Type." Typical occupations for "Group 1" are variously reported as being "Stevedore, loader, hodcarrier, ranch hand, loader-unloader, choker setter, ditch digger, off-bearer, jackhammer operator, mucker, warehouseman,"

---

[3]The rating furnished by the rating specialist as corrected by his testimony indicates that the major disability was categorized as one involving limited motion of one ankle, disability number 21.511 as found in the Schedule for Rating Permanent Disabilities (June 1966 as revised Dec. 10, 1969, effective Jan. 1, 1970). This disability carried a standard rating of 20 percent which when adjusted for occupational group number 1 carried a variant of G which increased it to 22 percent. If it were adjusted for occupational group 29 it would carry a variant of L and increase to 34 percent, or if group 31 or 33, a variant of J which would increase it to 29 percent. The foregoing ratings as adjusted for occupation, are subject to diminution by virtue of the petitioner's age of 27 at the time of the injury, and, as finally adjusted, were and would be respectively 19 percent and 30 percent and 25 percent. To the adjusted rating of 19 percent, the rating specialist added factors of 6 percent and 20 percent to obtain a total of 45 percent, which presumably would be greater with an increased basic rating as adjusted for occupation.

A rating was also given for a minor disability, apparently impaired function of the spine, disability number 18.1, rated at 3 percent. This was increased to 5 percent by the variant H for group 1 occupation, and would be the same under variant I for group 31 or 33 occupation. It would increase to 7 percent for variant K under group 29 occupation. Age would likewise produce a diminution, and the effect of this disability is also lessened by the necessity of adjusting for multiple disabilities. As rated for group 1 occupation and age this disability added 4 percent, which when adjusted for multiple disabilities produced a net increase over the rating for the major disability of 2¾ percent.

Since the award would be increased $52.50 for each ¼ percent of disability the difference in the rating as adjusted for occupation is significant.

(See 1 Hanna, Cal. Law of Employee Injuries and Workmen's Com. (2d ed. rev. 1972) ch. 11, §§ 11.01-11.06, pp. 11-1 to 11-53, *passim;* Herlick, Workmen's Compensation Law (1970) ch. 7, §§ 7.1-7.56, pp. 135-207, *passim;* and Dept. of Ind. Relations, Schedule for Rating Permanent Disabilities (1966 as rev. Dec. 10, 1969).)

and as well "car-loader or unloader, freight handler, furniture mover, hand trucker, longshoreman, truck driver helper, truck driver lumper, truck loader or unloader."

The generic title "Construction" in the schedule is divided into "Heavy Construction" and "Building Construction." Under the former "Group 29" refers to "High level work sites—marked hazards and physical requirements—balance required." The group characteristics are outlined as follows: "Constantly stand, stoop, and kneel; intermittently climb and stand on ladders, scaffolds, and beams on construction jobs; frequently work at high levels, intermittently walk, constantly push heavy hand tools or construction materials; constantly lift, carry and handle heavy tools—high degree of sense of balance—muscle coordination. Very heavy arduousness." Typical occupations are reported to be, "Structural iron worker, Bucker-up, metal tank erector, steel erector, bridge builder."

"Group 30," also under "Heavy Construction" deals with "high and ground level operations—climbing." It encompasses "linemen, high rigger, steeple jack" etc. and is admittedly not pertinent here.

Under "Building Construction," however, "Group 31" embraces, "Building construction — high and low level sites, hazards, climb-tools." The "Group Characteristics" are listed as: "Constantly stands at various work locations (ships, work benches, building under construction) frequently walks, intermittently climbs on ladders, scaffolds, stagings, ramps, unfinished parts of buildings; frequent stooping, crouching, and kneeling; constantly handles and fingers tools, materials, and measuring devices; frequently push and pull; frequently uses tools, including hammer and nails. Heavy arduousness." Typical occupations listed are: "Carpenter, bricklayer, electrician, aircraft mechanic, lather, maintenance man, roofer." "Group 33. Building construction — auxiliary services — all levels" also involves employees engaged in working on buildings under construction. It has group characteristics: "Constantly stand and walk about work sites (buildings under construction), frequently turn, stoop and crouch; frequently climb and stand on ladder or scaffolds, requiring balance; constantly handle tools and materials; frequently reach above shoulders; occasionally fingers. Heavy arduousness." Typical occupations are: "Painter, bill poster, cement finisher guniter, crane rigger, derrickman, paper hanger, plasterer, metal roofer, shipfitter, window cleaner, piledriverman."

It would appear that in placing petitioner in "Group 1" occupation, the referee and the board arbitrarily disregarded the specific evidence and findings in relation to petitioner's occupation. ■ The employee is entitled to be rated for the occupation which carries the highest factor

in the computation of disability. Labor Code section 3202 provides that the provisions of the Workmen's Compensation Act "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." It has been determined that where the duties of the employee embrace the duties of two forms of occupation, the rating should be for the occupation which carries the higher percentage. (See *Stocker* v. *Brea Grammar School District* (1932) 18 I.A.C. 32.) In this case the rating of the dismantler of the building at a lesser rate than the workman who assumes the same risks and exercises comparable skills in erecting the building is not warranted by the evidence of occupation.

## II

In a report dated January 2, 1969, Dr. Hurley opined, "[Petitioner] certainly will be physically disabled for his usual occupation of a truck driver or construction worker, which he has pursued in the past." On November 13, 1969, Dr. Gordon stated that the petitioner's pain in the left foot and ankle, his difficulty in walking on stairs or uneven terrain, and his need for a leather brace for the left ankle would prevent him from performing his previous work as a construction laborer.

In his deposition taken April 16, 1970, Dr. Hurley, who had treated and followed petitioner's injury since a few days after it was incurred, opined: "In terms of the entire labor market this man is limited to all types of work that will not require prolonged standing or prolonged walking or climbing. He could not do that, prolonged walking, standing or climbing, because his foot is deformed. . . . He could carry objects for short distances, but not repeatedly and not continuously. . . . I believe he is limited to a semi-sedentary occupation. . . . A partially standing and partially sitting occupation. . . . He is precluded from climbing because his foot is deformed, and walking up a ladder with a deformed foot is a painful situation and I would not advise him to, but once he got on the scaffolding, which is a flat surface, I would say that there is no complication in that."

In complaining of his original rating petitioner asserted that the instructions failed to consider the fact that he was foreclosed from climbing, and therefore from any work which had to be performed above the ground. When cross-examined the rating specialist acknowledged that additional factors relative to preclusion from climbing might affect the rating.

In the referee's report on the petition for reconsideration, the referee first observed, "The evidence does not require a finding that applicant

is precluded from climbing." The referee qualified the testimony of Dr. Hurley which is quoted above because it reveals that petitioner could climb a ladder with pain, because he, the referee, apparently interpolated "prolonged" as modifying "climbing" in Dr. Hurley's testimony, although the doctor on three occasions refrained from using that modifier for "climbing" when he did use it with "walking" and "standing," and because the petitioner testified he could go upstairs without difficulty, although he could not descend normally.

The conclusion that petitioner was not precluded from climbing is not warranted on the basis set forth in the report. The law does not contemplate that the employee should perform work involving climbing under the circumstances revealed by the evidence as a whole. In *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627 [83 Cal.Rptr. 208, 463 P.2d 432], the court stated: "In reviewing the evidence our legislative mandate and sole obligation under section 5952 is to review *the entire record* to determine whether the board's conclusion was supported by substantial evidence. [Citations.]" (1 Cal.3d at p. 637, italics added.) In finding that the referee's conclusion, that the applicant was not suffering from a considerable handicap which rendered him unable to return to his occupation, was not supported by substantial evidence, the court commented, ". . . the referee's report confronts petitioner with the grisly choice of obeying the medical advice of his treating physician or risking further injury by following the medical views of the referee." (*Id.,* at p. 640. See also *Luchini* v. *Workmen's Comp. App. Bd.* (1970) 7 Cal.App.3d 141, 145 [86 Cal.Rptr. 453].) Here, although no further injury is predicted, it is clear that only pain and suffering would result from an attempt to climb up and down ladders, and even stairs, in the course of prospective employment.

Secondly, the referee points out that the factor of pain from climbing was included in the subjective pain factors given to the rating specialist. Those factors included the pain from standing, walking and carrying, from stepping on sharp or irregular objects, or walking on rough ground, and the difficulty in descending stairs. (See fn. 2 above.) In *Hegglin* v. *Workmen's Comp. App. Bd., supra,* the court reviewed "petitioner's complaint that the Board committed error in its request for a recommended disability rating by failing to describe in full the factor of disability relating to his back injury which disability, among other things, prevented him from lifting more than 25 pounds." (4 Cal.3d at p. 171.) The court noted, "It is apparent from the Board's decision that it felt that the inability to lift more than 25 pounds caused by the back injury and the fatigue caused by the hepatitis each separately precluded Hegglin from performing heavy

work, but that the combination of the two conditions resulted in no greater disability. The Board concluded that the two conditions overlapped, and to the extent of the overlap only one rating should be given." (*Id.*) So here the referee in his report asserts that any preclusion from climbing is already included in the factors given to the rating bureau. In *Hegglin* the court concluded, "We hold that in cases involving multiple factors of disability caused by a single industrial accident the Board must, in any instructions it may direct to the rating bureau, fully describe each separate factor of disability. Any overlap of the factors of disability thus described is adequately taken into account, and the pyramiding of disabilities is properly avoided, by application of the multiple disabilities rating schedule." (*Id.,* at p. 174. See also *Hines* v. *Industrial Acc. Com., supra,* 215 Cal. 177, 188; *Subsequent Injuries Fund* v. *Industrial Acc. Com., supra,* 226 Cal. App.2d 136, 154-155; and Rules of Practice and Procedure of the Workmen's Compensation Appeals Board, § 10904.) Nevertheless the fact remains that the rating specialist testified in effect that although the factors given indicated that the petitioner had a marked handicap in the activities mentioned which would in effect handicap him in climbing, they did not establish that he was precluded from climbing, and that additional factors relative to preclusion from climbing might affect the rating.

In view of the controversy regarding the occupational rating as reviewed above, the evidence concerning petitioner's ability to climb should also have been submitted to the rating specialist. As stated in *Luchini* v. *Workmen's Comp. App. Bd., supra,* ". . . the board cannot rely on some administrative procedure to deny to petitioner a disability award commensurate with the disability that he has suffered. Whether compliance with the law as laid down in *LeVesque,* and in this opinion, requires amended instructions to the rating specialist, or a revision of the rating procedures, or whether it can be accomplished under section 4660, subdivision (a) of the Labor Code, are procedural matters for the board to determine on remand; its duty is to take whatever steps are necessary to insure that the award of permanent disability granted petitioner takes fully into consideration the work restrictions imposed by the treating physicians." (7 Cal.App. 3d at p. 146. See also *Fidelity & Cas. Co.* v. *Workmen's Comp. App. Bd., supra,* 252 Cal.App.2d 327, 335.)

### III

In the application filed January 22, 1968 "Temporary disability indemnity" and "Permanent disability indemnity" were listed among the areas of disagreement. The answer filed November 24, 1969 listed "Periods of disability" and "Permanent disability" as controverted issues. The employer

and the carrier alleged, as is admitted, that disability indemnity had been paid beginning January 12, 1968, the day following petitioner's injury, through October 1, 1969. The issues listed at the original hearing in January 1970 included, "Nature, duration, and extent of disability including a claim for temporary disability indemnity for the period October 2, 1969 to the present and continuing," and "Permanent disability."

In a report of an examination November 13, 1969, Marvin L. Gordon, M.D., stated, "His condition can now be considered permanent and stationary for rating purposes." This report also notes that petitioner began training as a dental technician on April 7, 1969 and was still at that time pursuing such training.

In a report of an examination December 22, 1969, Roy Y. Powlon, M.D., concluded that certain corrective surgery might be necessary. He concluded, "I think that before the man can be rated, I would like to have another orthopedic opinion on the left lower extremity with particular reference to the need for and the timing of the various procedures I have outlined above." In a report dated January 2, 1969, Dr. Hurley observed, "At the present time, I feel that it would be well to have Mr. Dalen register in a school for rehabilitation. He has expressed interest in learning the Dental Technician trade and I think that this would be an excellent procedure for him to follow. He certainly will be physically disabled for his usual occupation of a truck driver or construction worker, which he has pursued in the past. [¶] Accordingly, I think that he should be encouraged in his desire to pursue rehabilitation of an educational nature. In the meantime, no active medical treatment is indicated. He will continue with his foot brace in ambulation and I will see him on the basis of once a month and keep you advised of his progress."

On October 15, 1969, Dr. Hurley reported on the basis of his examination of petitioner on October 2, 1969. He stated, "Herewith is a narrative report as a basis on which you may calculate a permanent disability rating should you so desire." The doctor noted that petitioner would finish one phase of his study as a dental technician on October 9, 1969 and would then have an additional semester to go. He concluded, "Should you desire to rate this patient I think that the factors for rating are included in the body of the report and that a satisfactory rating could be made."

Subsequently, following visits on February 9 and 10, 1970, at which time a replacement brace was examined as originally furnished, and again as adjusted, Dr. Hurley wrote, "There is no pain associated with the use of the brace or with ambulation of his foot and I feel that the patient is

making very satisfactory progress in rehabilitation as a dental technician. He is attending the dental technician school in San Francisco and will be graduated in an additional six months. At that time he should become self-supporting as a dental technician."

On February 26, 1970, Dr. Hurley issued the following certificate, "The above captioned patient [petitioner] has recovered sufficiently from his recent disability that he may be returned to gainful employment as of Friday, February 27, 1970 Dental Technician only."

In his deposition taken April 16, 1970, Dr. Hurley observed, ". . . all of my findings and what I have to testify on was written on October 15, 1969 to the insurance carrier wherein I gave them all of the measurements and basis on which a settlement could be reached." In response to a question as to whether there had been any change in petitioner's condition since October 2, 1969, the doctor replied, "No, I don't think there's been any appreciable change except that the man has gotten a few months older . . . ; but physically speaking his fractures are now healed and they are the same now as they were in October and there is no change in his physical well-being as far as his traumatic injuries are concerned." The doctor did note that there was a change in his ability to work or compete in the labor market, as follows: "He has gone to school and become a dental technician and is now working as a dental technician. As such he is doing well and as such is having no trouble. I released him to go to work in February of 1970, February the 27th." Dr. Hurley explained that the question of whether petitioner could have been released prior to that time never came up, and added, ". . . but as far as his physical condition was concerned, I wasn't going to release him. I wanted to continue to follow him until something was done for him so that he could make a living."

When questioned as to whether the concept of "permanent and stationary" would depend on the rehabilitative process, the doctor made the following distinction: "You are talking about two different things. You are going to talk about trauma, injury, or physical disability, or you are going to talk about rehabilitation, period."

At the hearing at which the rating specialist was cross-examined, petitioner's attorney stated that petitioner completed his schooling July 31, 1970, and that he would concede that his condition became permanent and stationary on August 1, 1970. It was subsequently determined that the appropriate date was his graduation on August 19, 1970.

The referee's opinion stated, "Applicant's testimony supports the finding of occupation. [¶] Applicant's condition was stationary and ratable as of October 2, 1969 in accordance with the report of Melvin T. Hurley, M. D.

of October 15, 1969. . . . [¶] Permanent disability indemnity is awarded in accordance with the recommended permanent disability rating filed and served herein."

The referee's report on reconsideration again refers to Dr. Hurley's report and his deposition for support of the position that petitioner's condition was permanent and stationary October 2, 1969. The evidence is sufficient to sustain that finding, unless, as contended by petitioner the law requires that temporary disability payments continue during any period in which rehabilitation training is undertaken.

Section 10900 of the Rules of Practice and Procedure of the Workmen's Compensation Appeals Board provides: "Permanent Disability. A disability is considered permanent after the employee has reached maximum improvement, or his condition has been stationary for a reasonable period of time, as may be determined by the Appeals Board or a referee." (See *Manning* v. *Workmen's Comp. App. Bd.* (1970) 10 Cal.App.3d 655, 658 [89 Cal. Rptr. 76]; *Luchini* v. *Workmen's Comp. App. Bd., supra,* 7 Cal.App.3d 141, 144; *Edgar* v. *Workmen's Comp. App. Bd.* (1966) 246 Cal.App.2d 660, 665 [56 Cal.Rptr. 37]; *Subsequent Injuries Fund* v. *Industrial Acc. Com., supra,* 226 Cal.App.2d 136, 143-144; 1 Hanna, Cal. Law of Employee Injuries and Workmen's Comp. (2d ed. rev. 1972) § 11.02[1], pp. 11-13–11-14; and Herlick, Cal. Workmen's Compensation Law (1970) § 7.38, p. 180.)

■ "Whether an injury is permanent is purely a question of fact for the determination of the commission which is final and conclusive on said issue if supported by any substantial evidence. [Citations.]" (*Subsequent Injuries Fund* v. *Industrial Acc. Com.* (1964) 226 Cal.App.2d 136, 144 [37 Cal.Rptr. 844]. See also *County of L. A.* v. *Indus. Acc. Com.* (1936) 14 Cal.App.2d 134, 137 [57 P.2d 1341]; and *Pearce* v. *Workmen's Comp. App. Bd.* (1970) 35 Cal. Comp. Cases 593, 594.)

■ Petitioner rests his contention that the period of temporary disability should include a period in which the employee is rehabilitating himself for other work by undertaking training upon the provisions of sections 139.5 and 4651.2 of the Labor Code. Examination of the former section reveals that it does provide for continuous payment of temporary disability payments when the injured workman is voluntarily undertaking a rehabilitation program initiated by an employer or insurance carrier. The section expressly provides: "The initiation of a rehabilitation program or the acceptance thereof shall be voluntary and not be compulsory on the employer, the insurance carrier or the injured workman." Section 4651.2 precludes the filing of a petition alleging that disability has decreased

512

or terminated (see § 4651.1) "while the injured workman is pursuing a rehabilitation plan under Section 139.5 . . . ."

In the absence of evidence of such a plan these sections have no application to the program undertaken by the petitioner on his own initiative at the suggestion of Dr. Hurley. In Herlick, California Workmen's Compensation Law, the author makes the following comment concerning permanent disability benefits, "Several [jurisdictions] couple an occupational rehabilitation program with a life pension which is payable upon showing a wage loss thereafter. As yet, the California system is not accompanied by any comprehensive or consistent program of physical and occupational rehabilitation. There are various rehabilitation services available under other programs, but these have not been made an integral part of the administration of the California law. The enactment of Labor Code Sec. 139.5 in 1965 places authority in the office of Administrative Director to study and develop such a program and to review voluntary rehabilitative efforts of the employer and employee. Many successes under voluntary programs have been reported." (P. 136.)

In the absence of further legislation or entry into a bilaterally accepted program of rehabilitation, the referee and the board properly applied existing standards in determining the time of onset of the petitioner's permanent disability. The fact that the Supreme Court granted a hearing in *Pearce* v. *Workmen's Comp. App. Bd., supra* (see 35 Cal. Comp. Cases p. 594), is not necessarily indicative that the law will be changed, since that case was settled and never adjudicated by the higher court.

IV

Section 5908.5 of the Labor Code requires that the order denying a petition for reconsideration "state the evidence relied upon and specify in detail the reasons for the decision." (See *LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627, 633-635; *Evans* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 753, 755 [68 Cal.Rptr. 825, 441 P.2d 633]; and *Gaiera* v. *Workmen's Comp. App. Bd., supra,* 271 Cal.App.2d 246, 248.)

In *Evans* the court stated, "The purpose of the requirement that evidence be stated and reasons detailed . . . is to assist the reviewing court to ascertain the principles relied upon by the lower tribunal, to help that tribunal avoid careless or arbitrary action, and to make the right of appeal or of seeking review more meaningful. [Citation.]" (68 Cal.2d at p. 755. See also *LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627, 634.)

In *LeVesque* the court held "that if the appeals board denies a petition for reconsideration its order may incorporate and include within it the report of the referee, provided that the referee's report states the evidence relied upon and specifies in detail the reasons for the decision. (See Lab. Code, § 5908.5.)" (1 Cal.3d at p. 635. See also *Gaiera* v. *Workmen's Comp. App. Bd., supra,* 271 Cal.App.2d 246, 248.)

The "Order Denying Reconsideration" incorporates the referee's report as authorized by *LeVesque.* Petitioner's true complaint is not with the failure of that report to state the evidence relied upon or the reasons for the decision which has been reviewed, but with the failure of that evidence to support the conclusions inherent in what he considers, and this court has found to be, an award predicated on the failure to consider proper rating factors.

The order denying reconsideration is annulled and the case is remanded to the Workmen's Compensation Appeals Board with directions to take further proceedings consistent with the views expressed herein.

Molinari, P. J., and Elkington, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied August 23, 1972.