[Civ. No. 25895. Third Dist. Dec. 1, 1986.]

JERRY R. HOLT, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and DEPARTMENT
OF CORRECTIONS, Respondents.

1258

**COUNSEL**

Phillip N. Bruce for Petitioner.

Richard W. Younkin, William B. Donohoe, Alvin R. Barrett, Charles E. Finster, Richard A. Krimen, Michael J. Brodie, Arthur Hershenson, Fernando Da Silva and Louis Harris for Respondents.

**OPINION**

**EVANS, J.**—Petitioner seeks review of a decision of the Workers' Compensation Appeals Board (the Board) after denial of his petition for reconsideration of the Board's decision to adopt the report and recommendation of the workers' compensation judge (WCJ) regarding petitioner's occupational classification. He argued then and now that he was entitled to a higher occupational rating. We affirm.

Petitioner was employed by the Department of Corrections (Department) at Susanville as a "boiler room tender/stationary engineer" from January 1974 to March 1983. In April 1983, petitioner filed claim RDG 19392 with the Board alleging he sustained an injury arising out of and occurring in the course of that employment which resulted in hearing loss, labyrinthitis, dizziness, and tinnitus. Petitioner also filed two additional claims, RDG 19391, alleging cumulative injury to his feet and back, and RDG 19393, high blood pressure and a weakened heart.

All three cases were scheduled for hearing on January 18, 1984. At that time, the parties stipulated petitioner was employed as a "boiler room tender (stationary engineer)" in RDG 19392 and a "stationary engineer/boiler room tender—custodial duties" in RDG 19393; no occupation was noted in stipulations regarding RDG 19391. Thereafter, the parties settled cases RDG 19391 and RDG 19393 by compromise and release.

In a later hearing conducted on the remaining case, the WCJ noted the stipulations previously set forth and heard testimony from petitioner. The minutes of the proceeding reflect that petitioner testified "he worked as a

boiler tender and in the boiler room." The Board subsequently issued an initial recommended rating for case RDG 19392 describing petitioner's occupation as a "Boiler Room Attendant" and using occupational variant 20D. Following petitioner's objection to that occupational classification, an amended recommendation was issued describing petitioner as a "Boiler Room Tender (Stationary Engineer)" and "Stationary Engineer/Boiler Room Tender—Custodial Duties" and using occupational variant 22G. Again, petitioner objected claiming that any job with "custodial duties" required the higher occupational rating of 54.[1]

In September 1985, the WCJ issued findings and award based on an application of occupational variant 22G. Petitioner was awarded medical expenses, medical-legal costs, temporary disability, and permanent disability. In denying petitioner's motion to strike the recommended rating based upon the occupational classification, the WCJ noted in the memorandum of decision that petitioner had previously testified he worked as a boiler room tender and apparently had also been known as a stationary engineer. Since petitioner failed to submit any evidence to show he had custodial duties, the WCJ concluded and the Board agreed that use of the higher occupational variant of 54 was not warranted.

### DISCUSSION

The sole issue before us is the classification of petitioner's occupational duties. ■ "The importance of this classification is that the percentage of permanent disability is a function of the part of the body injured, the extent of physical disability or impairment, the age of the employee at the time of injury, and the injured's occupation at the time of injury. [Citations.]" (*National Kinney* v. *Workers' Comp. Appeals Bd.* (1980) 113 Cal.App.3d 203, 209 [169 Cal.Rptr. 801].) Consequently, the occupational variant has a direct impact on the size of the permanent disability award.

Petitioner argues he was entitled to be rated under occupational group 54 because (1) the parties had stipulated that he had custodial duties in case RDG 19393, and (2) various sections of the Administrative Code establish that custodial duties are an integral part of the duties of all employees of the Department. We think not. Although a custodian with the Department is classified under group 54 in California's schedule of occupational ratings

---

[1]On August 12, 1985, petitioner wrote a letter to the WCJ in an attempt to justify the use of the higher occupational variant. The letter cited numerous Administrative Code sections to support petitioner's position.

The Board, however, has no record of having received that letter. It apparently first became aware of the letter and the cited Administrative Code sections after petitioner had filed for reconsideration.

(see Lab. Code, § 4660), petitioner has failed to demonstrate that he in fact performed custodial duties.

■ The stipulation that petitioner had custodial duties was made in a dismissed case. Accordingly, it has no bearing on this case. The parties had stipulated in this case that petitioner was merely a "boiler room tender/stationary engineer," with no reference to custodial duties.

■ Petitioner's other contention is equally without merit. He argues the Department's regulations, as contained in title 15 of the Administrative Code, establish a conclusive presumption that all employees of the Department have custodial duties and therefore are entitled to a group 54 rating. He is wrong.

The Administrative Code sections cited by petitioner appear to set out general responsibilities of all employees to prevent escapes or disorder, report rule violations, and to maintain the security and safety of the institution. (Cal. Admin. Code, tit. 15, §§ 3270, 3271, 3290, 3291, 3300, 3311.) The only mention of actual "custodial" duties required by all employees is provided by section 3397. That section states "Regardless of an employee's class of service, in an *emergency* any employee must perform any service, including *custodial* functions, *if so directed* by the warden, superintendent or regional administrator . . . ." (Italics added.) Thus, it appears the responsibility of performing custodial duties may be imposed on all employees only under emergency situations.

Any other construction of the Department's regulations for purposes of permanent disability rating would be absurd. The purpose of an occupational rating schedule is to aid in determining "the relative effects of disability to various parts of the body taking into account the *physical requirements* of various occupations." (Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) Permanent Disability Evaluation, § 15.9, p. 536, italics added.) Petitioner's interpretation of the cited Administrative Code sections would eliminate any occupational distinction among the Department's personnel for disability rating purposes—i.e., clerical personnel or kitchen staff would be rated on the same disability level as the prison guards. The inappropriateness of such a rating scheme is obvious. The Administrative Code does not establish a conclusive presumption that all employees of the Department have custodial duties and petitioner cannot claim he had such duties by mere virtue of his employment.

■ Petitioner also mistakenly relies on *Dalen* v. *Workmen's Comp. Appeals Bd.* (1972) 26 Cal.App.3d 497 [103 Cal.Rptr. 128], and *National Kinney* v. *Workers' Comp. Appeals Bd., supra,* 113 Cal.App.3d 203, in

support of his position. Although those cases hold that an employee who performs duties of two occupations is entitled to a rating based on the occupation carrying the higher percentage of disability, it is clear that those decisions were based upon evidence that the employee did *actually* perform duties required of the more arduous occupation. (*Dalen, supra,* at pp. 503-504; *National Kinney, supra,* pp. 213-214.)

Here, petitioner did not meet that burden of proof. (*California State Polytechnic University* v. *Workers' Comp. Appeals Bd.* (1982) 127 Cal.App.3d 514, 520 [179 Cal.Rptr. 605]; see Lab. Code, § 3202.5.) The evidence presented before the WCJ consisted of the parties' previous stipulation in this matter and petitioner's testimony that he was a boiler room tender. There was no evidence presented to indicate petitioner performed custodial duties. Accordingly, the holdings of *Dalen* and *National Kinney* are inapplicable.

■ Although Labor Code section 3202 requires liberal construction of the Workers' Compensation Act in favor of injured employees, "[it] authorizes neither the creation of nonexistent evidence nor the creation of a conflict in the evidence which does not otherwise exist." (*Sully-Miller Contracting Co.* v. *Workers' Comp. Appeals Bd.* (1980) 107 Cal.App.3d 916, 926 [166 Cal.Rptr. 111].) Upon a review of the entire record, we find the Board's decision to be amply supported by substantial evidence. (*LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].)

The judgment (decision) is affirmed.[2]

Puglia, P. J., and Ackley, J.,* concurred.

Petitioner's application for review by the Supreme Court was denied February 11, 1987.

---

[2]Our decision obviates the need to discuss the appropriateness of an award of attorney fees under Government Code section 800.

*Assigned by the Chairperson of the Judicial Council.