Filed 11/21/14  Powell v. WCAB CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| POPE POWELL,<br><br>        Petitioner,<br><br>v.<br><br>WORKERS' COMPENSATION APPEALS BOARD and CITY AND COUNTY OF SAN FRANCISCO,<br><br>        Respondents. | A141429<br><br>(W.C.A.B. No. ADJ8710988) |

After Pope Powell was permanently injured in a workplace accident, a divided panel of the Workers' Compensation Appeals Board (Board) affirmed the finding of a workers' compensation administrative law judge (WCJ) that occupational group 212 applied for purposes of determining Powell's percentage of permanent disability.  We granted Powell's petition for review and ordered that, unless any party filed an objection, the briefing would be deemed complete and the exhibits submitted by the parties in connection with the writ petition would constitute the record under review.  No party objected.  We now remand the case to the Board for determination of the appropriate occupational group.

BACKGROUND

In 2011, Powell sustained an industrial injury to his shoulders and elbows while employed by respondent City and County of San Francisco (City).  The injury caused permanent partial disability.

1

Powell's job title was Director of Fleet Management and Operations. He supervised five employees; dealt with budgets and requests for proposals; and wrote contracts, policies, and procedures. According to Powell's undisputed testimony, to perform his job duties he spent 80 to 85 percent of his time on a computer performing tasks such as emailing, creating spreadsheets and budgets, and drafting various documents.

The parties disputed the appropriate occupational group for Powell. Powell contended occupational group 112 applied; the City contended occupational group 212 applied. The WCJ agreed with the City, and a majority of the Board affirmed the WCJ. The dissenting Board member contended that a third group, 211, was the most appropriate.

DISCUSSION

I.

"In determining the percentages of permanent disability, account shall be taken of the nature of the physical injury or disfigurement, *the occupation of the injured employee*, and his or her age at the time of the injury, consideration being given to an employee's diminished future earning capacity." (Lab. Code, § 4660, subd. (a), italics added.) The purpose of considering the employee's occupation is "to aid in determining 'the relative effects of disability to various parts of the body taking into account the *physical requirements* of various occupations.' " (*Holt v. Workers' Comp. Appeals Bd.* (1986) 187 Cal.App.3d 1257, 1261 (*Holt*).)

The percentage of permanent disability is calculated pursuant to a periodically amended schedule formulated, pursuant to the Labor Code, by the Director of the Division of Workers' Compensation. (Lab. Code, §§ 4660, subds. (b)(2) & (c), 3206.) The schedule applicable to this case identifies 45 occupational groups. (Cal. Div. of Workers' Comp., Schedule for Rating Permanent Disabilities Under the Provisions of the Labor Code of the State of California (Jan. 2005) p. 1-8 (hereafter Schedule).) The schedule includes a brief description of the characteristics of each occupational group as

2

well as a lengthy list of occupations and their correlative groups. (*Id.* at pp. 3-2 to 3-26, 3-29 to 3-37.)

More than one occupational group may apply to an applicant's job. In such cases, "[t]he employee is entitled to be rated for the occupation which carries the highest factor in the computation of disability. Labor Code section 3202 provides that the provisions of the Workmen's Compensation Act 'shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment.' It has been determined that where the duties of the employee embrace the duties of two forms of occupation, the rating should be for the occupation which carries the higher percentage." (*Dalen v. Workmen's Comp. Appeals Bd.* (1972) 26 Cal.App.3d 497, 505-506 (*Dalen*); accord, *National Kinney v. Workers' Comp. Appeals Bd.* (1980) 113 Cal.App.3d 203, 215 (*National Kinney*).) "[N]o precise percentage of time for [performing the duties of the higher percentage occupation group] is required but rather the pertinent inquiry is whether [performance of those duties] is an '*integral part of the worker's occupation.*' " (*National Kinney, supra,* at p. 216.)

In *Dalen,* the claimant was a demolition worker. (*Dalen, supra,* 26 Cal.App.3d at p. 500.) He spent approximately one third of the time off the ground: climbing with and without ladders (including climbing on the 13-foot high sides of the demolition trucks); working on roofs; and standing on window ledges, walls, and beams. (*Ibid.*) The remainder of the time he spent driving a truck and tearing down buildings at ground level. (*Ibid.*) The Board affirmed his classification in occupation group 1 which, under the rating schedule then in effect, had the following characteristics: " ' "Heavy arduousness, stands and stoops frequently, walks short distances, *may occasionally climb stairs, ramps or ladders*, frequently reaches above or below shoulders, frequently lifts, carries, and handles heavy tools or materials, or swings shovel, pickax, sledge hammer, or other tool, frequently pushes and pulls heavy materials." ' " (*Id.* at p. 502, italics added.)

The court of appeal reversed, noting that while group 1 "refers to a worker who 'may occasionally climb stairs, ramps, or ladders' the uncontradicted testimony reflected that petitioner spent one-third of his time working off the ground, and that his work

3

involved climbing, sometimes with ladders and sometimes without, and as well climbing on high sided trucks used in the demolition work." (*Dalen, supra,* 26 Cal.App.3d at p. 504.) Other occupational groups, however, included the following characteristics: " 'intermittently climb and stand on ladders, scaffolds, and beams on construction jobs; frequently work at high levels' "; " 'intermittently climbs on ladders, scaffolds, stagings, ramps, unfinished parts of buildings' "; and " 'frequently climb and stand on ladder or scaffolds, requiring balance.' " (*Id.* at p. 505.) The court held, under the dual occupation rule, the claimant should not have been classified in group 1. (*Id.* at pp. 505-506.)

In *National Kinney*, the claimant was a tree trimmer. (*National Kinney, supra,* 113 Cal.App.3d at p. 210.) According to the written job description and his testimony, his job duties included climbing ladders to trim tree limbs. (*Id.* at pp. 211, 213.) The claimant did not indicate how often he performed this duty. (*Id.* at p. 213.) The workers' compensation judge classified the claimant in occupational group 1 which included the characteristic: " 'may occasionally climb stairs, ramps or ladders.' " (*Id.* at p. 210.) The workers' compensation judge reasoned, " 'Any high level tree trimming would appear to be minimal or only incidental to the majority of the employee's duties which clearly do not involve anything other than low level tree trimming, mowing of lawns, planting of young trees and shrubs, trimming of shrubbery and handling of debris.' " (*Id.* at p. 214.) The Board reversed and instead classified the claimant in group 30, finding that while group 1 " 'clearly fits some of applicant's duties, some of the duties do not fit into this category. Occupations in which workers must climb to any more than a minimal height or work in positions off the ground contemplate other occupational groups. For example, [other occupational groups] . . . contemplate some heavy work at above ground level. *Dalen, supra,*[ 26 Cal.App.3d 497] does not set forth any particular time requirement for the activities engaged in. Where the activities are an integral part of the worker's occupation, as they are here, the worker is entitled to the higher occupational group and the variant that results therefrom. In this case we believe that group 30 most accurately reflects applicant's dual duties . . . .' " (*Id.* at pp. 214-215.)

The court of appeal affirmed: "The Board has correctly noted that to be entitled to the higher classification . . . no precise percentage of time for working at heights is required but rather the pertinent inquiry is whether working at heights is an '*integral part of the worker's occupation*.' Thus, as working at heights was here a required part of applicant's duties as assigned by the employer, applicant is entitled to the higher occupational variant." (*National Kinney, supra,* 113 Cal.App.3d at p. 216.)

II.

Both parties agree Powell's job falls, at least in part, within occupational group 212. They dispute whether his job also falls outside of group 212 under the "dual occupation" rule.

The characteristics for the relevant groups are as follows:

Group 212, which is undisputedly appropriate for Powell's "managerial" duties: "Mostly Professional and Medical Occupations [¶] Work predominantly performed indoors, but may require driving to locations of business; less use of hands than 211; slightly higher demands on spine than 210 & 211. [¶] Typical occupations: Chemist, Dialysis Technician, Secondary School Teacher." (Schedule, *supra*, at p. 3-30.)

Group 112, which Powell argues is the most appropriate: "Mostly Clerical Occupations [¶] Highest demand for use of keyboard; prolonged sitting. [¶] Typical occupations: Billing Clerk, Computer Keyboard Operator, Secretary." (Schedule, *supra*, at p. 3-29.)

Group 211, which the dissenting Board member found the most appropriate: "Mostly Clerical Occupations [¶] Emphasis on frequent fingering, handling, and possibly some keyboard work; spine and leg demands similar to 210. [¶] Typical occupations: Bank clerk, Inventory clerk, License clerk." (Schedule, *supra*, at p. 3-30.)

Other groups also contemplate keyboard work. For example, group 111, "Professional and Clerical Occupations [¶] Substantial use of keyboards; greater demands for standing and walking than 112 and 120. [¶] Typical occupations: Accountant, Claims Clerk, Reservations Agent," and group 110, "Professional Occupations [¶] Some use of keyboards but less than 112 or 112[sic]; greater standing and walking demands than 112

5

and 120. [¶] Typical occupations: Lawyer, Loan Officer, Urban Planner." (Schedule, *supra*, at p. 3-29.)

The Board majority affirmed the WCJ's classification of Powell in group 212, quoting with approval from the WCJ's opinion: " 'Though [Powell] spent the majority of his work day using a key board, his integral job duties and salary were managerial in nature. . . .  [P]reparation of contract terms, charts, and the use of email undoubtedly necessitates extensive keyboarding, however, the clerical function is not at the core of his job.' "  The Board majority continued: "Applicant's job required the use of a computer to fulfill the managerial responsibilities inherent in the position of Director of Fleet Management and Operations, not as his core task. [¶] . . . We agree with the WCJ that the dual occupation rule is not implicated here, because 'occupation code 212 does in fact contemplate[] use of a computer by a professional or managerial employee,' and that 'the nature of computer use contemplated by occupation code 112 is in the order of the "highest demand" for keyboarding and although [applicant] utilized a computer every day, the nature of his use was not in the "highest demand." ' "

The dissenting Board member disagreed.  While agreeing that Powell's job was "managerial in nature," the dissenting member found "[h]is computer use . . . was necessary and integral to the successful performance of the duties and responsibilities inherent in his position."  Applying the dual occupation rule, the dissenting member found occupational group 211 "the most appropriate."  She also cautioned the Board to "consider the occupational group codes that most accurately reflect the injured worker's *actual work activities*."  (Italics added.)

We agree with the dissenting Board member that the proper focus is on the claimant's physical work activities.  A claimant's occupation is relevant in determining the percentage of disability because the determination must consider " 'the *physical requirements* of various occupations.' "  (*Holt, supra,* 187 Cal.App.3d at p. 1261.)  The Board majority's statements that Powell's " 'integral job duties . . . were managerial in nature' " and his "job required the use of a computer to fulfill the managerial responsibilities inherent in [his] position . . . , not as his core task," erroneously focus on

6

a characterization of his job duties as "managerial." The relevant inquiry does not end with such a characterization, but rather looks to the *physical activities* required to perform those managerial duties. If a worker's job requires a significant amount of keyboard use, the worker will be substantially impacted by an injury affecting the ability to use a keyboard, regardless of whether the keyboard is used to perform managerial or clerical duties.

The evidence is undisputed that Powell's occupation required a substantial amount of time on a computer or other keyboard and this activity was integral to his job.[1] The Board majority found occupational group 212 " 'contemplate[s] use of a computer.' " However, the amount of use contemplated is necessarily light: group 212 requires "less use of hands than [group] 211," while group 211 requires "frequent fingering, handling, and *possibly some keyboard work*." (Schedule, *supra*, at p. 3-30, italics added.) Group 212, which contemplates some small amount of keyboard use, is only partially appropriate in classifying Powell, who spent a substantial amount of his work time on a computer or other keyboard.

We note the majority and dissenting member of the Board agreed group 112— characterized by the "[h]ighest demand for use of keyboard" (Schedule, *supra*, at p. 3-29)—was not an appropriate group. However, other occupational groups contemplate a greater amount of keyboard work than group 212, including group 211 ("some keyboard work"), group 110 ("[s]ome use of keyboards"), and group 111 ("[s]ubstantial use of keyboards"). (*Id.* at pp. 3-29 to 3-30.) Accordingly, we remand to the Board for a determination of which occupational group is most appropriate in light of Powell's physical work activities.

---

[1] To the extent the Board majority found, in stating Powell's keyboarding was not "his core task," that keyboarding was not an integral part of his job, such a finding is not supported by the undisputed evidence that a substantial amount of keyboarding was a required part of the job. (*National Kinney, supra,* 113 Cal.App.3d at p. 216.)

DISPOSITION

The Board's order is annulled and the matter is remanded for further proceedings consistent with this opinion.

_____
SIMONS, J.

We concur.

_____
JONES, P.J.

_____
BRUINIERS, J.