[Civ. No. 23848. First Dist., Div. Three. Mar. 8, 1968.]

In re FRANCES GRIMMER, a Person Coming Under the Juvenile Court Law.

COUNTY OF MARIN, Petitioner and Respondent, v. COUNTY OF MENDOCINO, Defendant and Appellant.

[Civ. No. 23849. First Dist., Div. Three. Mar. 8, 1968.]

In re JAMES FRANK D. SMITH, a Person Coming Under the Juvenile Court Law.

COUNTY OF SONOMA, Petitioner and Respondent, v. COUNTY OF MENDOCINO, Defendant and Appellant.

[Civ. No. 23850. First Dist., Div. Three. Mar. 8, 1968.]

In re JERRY DEAN SMITH, a Person Coming Under the Juvenile Court Law.

COUNTY OF SONOMA, Petitioner and Respondent, v. COUNTY OF MENDOCINO, Defendant and Appellant.

[Consolidated Appeals.]

*Assigned by the Chairman of the Judicial Council.

Thomas F. Cleland, District Attorney, Gerald A. Sperry, Assistant District Attorney, and Timothy O. Stoen, Deputy District Attorney, for Defendant and Appellant.

Douglas J. Maloney, County Counsel (Marin), Thomas G. Hendricks, Deputy County Counsel, Richard M. Ramsey, County Counsel (Sonoma), and Clement J. Dougherty, Jr., Deputy County Counsel, for Petitioners and Respondents.

John R. Kennedy, County Counsel (Santa Clara) and Nordin F. Blacker, Deputy County Counsel, as Amici Curiae on behalf of Petitioners and Respondents.

DRAPER, P. J.—Although juvenile court proceedings are before us, these appeals do not turn upon the rights or interests of the juveniles or their parents. Rather, the dispute is solely among counties seeking determination of which shall bear the administrative and financial burden of wardships. Mendocino County appeals from orders of the juvenile courts of Marin and Sonoma Counties transferring to it the Grimmer and James Smith wardships. These appeals have been consoli-

dated. Sonoma and Mendocino Counties have stipulated that disposition of the appeal in the Jerry Smith wardship shall follow that in the two consolidated appeals.

In each of the two consolidated appeals, wardship was adjudged upon findings of violation of law (Welf. & Inst. Code, § 602). Each minor's parents had been divorced, and the mother of each had been awarded custody by the divorce court. Upon adjudication of wardship, each minor had been placed on probation in the home of the mother, subject to supervision by the juvenile probation officer. In each case, the minor's adjustment was found unsatisfactory, and each was removed from the custody of the parent and placed in that of the probation officer for placement in a foster home. Each mother, having remarried, thereafter moved to Mendocino County. The juvenile courts of Marin and Sonoma Counties ordered the juvenile proceedings transferred to the county of the mothers' new residence. Mendocino, the transferee county, appeals. The appeals are authorized by statute (Welf. & Inst. Code, § 754).

There is no element affecting the interests or welfare of the minors. Transfer of the case does not compel removal of the minor from the foster home in which he has been placed nor does retention limit choice of foster homes (Welf. & Inst. Code, § 755).

Transfer of a juvenile court proceeding is authorized when the "residence" of the juvenile is changed to another county (Welf. & Inst. Code, § 750). The propriety of the transfers thus turns upon "residence." That term is defined in some detail by the same code (§ 17.1). The parties agree that the residence of the father does not determine that of the child, under subdivision (a) of section 17.1, because by the divorce decree the father "has been legally deprived of his custody." Our question is whether subdivision (b) or (c) is the applicable provision. The few reported decisions dealing with transfer (*In re Gi*, 134 Cal.App.2d 479 [286 P.2d 364]; *In re Alexander*, 152 Cal.App.2d 458 [313 P.2d 182]; *County of Los Angeles* v. *Superior Court*, 128 Cal.App. 522 [18 P.2d 112]) are of no aid on this issue, and we must look to the statutes alone.

Subdivision (b) of section 17.1 fixes the child's residence as that of the mother "unless the mother . . . has been legally deprived of his custody." Appellant county argues that the orders placing the two minors in the custody of the probation officer for foster home placement "legally deprived" each

mother of custody. We agree. The usual step of continuing the child in the home of the mother, under supervision and control of the probation officer, had been tried and found inadequate for the child's welfare. The ensuing removal of custody from the mother, and its transfer to the probation officer for purposes of placement in a foster home, necessarily deprived the mother of custody and would be but a futile gesture if it did not have that effect.

Respondents argue that the deprivation is only of "physical custody." The orders are not so limited. They remove "custody." If the argument has any relevancy to the issue before us, it can be only because removal of "physical custody" is in some way less than "legally deprived of custody." But the breadth and importance of removal from "physical custody" is emphasized by sections 726 and 777, fixing specific standards for such removal. The code permits commitment of the minor "to the care, custody and control of . . . (c) The probation officer, to be . . . placed in some suitable family home or suitable private institution" (§§ 727, subd. (c), 730, 731). The foster home orders now before us obviously are made under this broad authority, and must be construed broadly as removing all essential "care, custody and control" from the mothers.

Moreover, section 17.1 itself emphasizes the importance of physical custody as the determining factor. Subdivision (d) provides that in cases of joint custody it is the person having physical custody whose residence determines that of the child.

Of course, the juvenile court orders depriving the parents of custody are not "permanent," since they may be modified (§§ 775, 776, 778). But this does not reduce their effect in depriving the mother of custody. Respondents readily concede that the divorce decrees awarding custody to the mothers effectively deprived the fathers of custody. Yet those orders are similarly subject to modification (Civ. Code, § 138). The fixing of the residence of a child "declared permanently free from the custody and control of his parents" (Welf. & Inst. Code, § 17.1, subd. (g)) doubtless refers to the civil proceeding to declare a child free from the custody and control of either or both parents (Civ. Code, § 232). That order is permanent because, by statute (Civ. Code, § 238), the court has "no power to set aside, change, or modify it." The specific provision of section 17.1 covering such permanent removal emphasizes that less permanency is contemplated by the refer-

ences of subdivisions (a) and (b) to the parent "legally·deprived of custody."

We conclude.that the juvenile court orders·removing custody from the parents.and awarding it to the probation officer for foster home placement "legally deprived" the mothers of custody. Thus subdivision (b) of section 17.1 has no application, and the mother's removal to Mendocino County did not effect a change of residence of either minor. Rather, under subdivision (c), their residences continued to be Marin for Miss Grimmer, and Sonoma for young Smith.

Orders for transfer reversed.

Salsman, J., and Brown (H. C.), J., concurred.