64 Cal.App.3d 945 (1976)
134 Cal. Rptr. 881
In re RAMONA S., a Person Coming Under the Juvenile Court Law.
COUNTY OF SONOMA, Plaintiff and Appellant,
v.
COUNTY OF MARIN, Defendant and Respondent.
Docket No. 38971.
Court of Appeals of California, First District, Division One.
December 17, 1976.
*947 COUNSEL
James P. Botz, County Counsel, and Thomas B. Sawyer, Deputy County Counsel, for Plaintiff and Appellant.
Douglas J. Maloney, County Counsel, and Dorothy R. Jones, Deputy County Counsel, for Defendant and Respondent.
OPINION
ELKINGTON, J.
The parents of Ramona S., now 14 years of age, were divorced. Thereafter in 1970 Ramona's father was awarded her custody by an order of the superior court. Nevertheless, Ramona resided with her mother in Sonoma County until October 10, 1975. On that date, with her mother's approval, she began living with her father and stepmother who were and are residents of Marin County. Twenty days later, October 30, 1975, Ramona ran away from her father's Marin County home; three days after that she appeared at her mother's home in Sonoma County. Upon being advised by the girl's mother of her whereabouts, Ramona's father returned her to his Marin County home. At this point Ramona had stated "she wants to go home to her father very, very badly and if allowed to do so, she would make every effort to change her behavior."
Upon Welfare and Institutions Code section 601 proceedings Ramona was, on November 26, 1975, declared a ward of the Marin County Juvenile Court. Her custody was removed from both parents but she was placed by the court in her father's Marin County home. On December 10, 1975, Ramona again ran away and her whereabouts were unknown until, two days later, she appeared at her mother's residence in Sonoma County. Ramona's mother promptly notified her father, or the Marin County juvenile authorities, and she was returned later on the same day to the Marin County Juvenile Hall. A supplemental Welfare and Institutions Code section 601 petition was thereafter filed, December 16, 1975, in the juvenile court, and Ramona was detained in the Marin County Juvenile Hall pending its determination.
A hearing on the supplemental petition was held January 7, 1976. At the hearing a juvenile probation officer recommended to the court that "we should aim for placement [of Ramona] in Sonoma County." On the *948 same day another juvenile probation officer obtained a signed writing from Ramona's father stating: "This is to acknowledge that I ... father of Ramona ... do hereby relinquish legal and physical custody of Ramona to her Mother...."[1] One of the juvenile probation officers reported that "although Ramona's mother is willing to take her back she does have concerns about Ramona's ability to behave." That officer, however, expressed an opinion "that a program such as our [i.e., Marin County's] Children's Treatment Center will be most appropriate for Ramona."
Following the hearing the juvenile court made its order which, as pertinent, recited:
"1. That minor be continued as a ward of the Marin County Juvenile Court under the provisions of Section 601 of the Juvenile Law.
"2. That the welfare of minor requires that custody continue to be removed from her parents and that she be committed to the Probation Officer for placement and supervision.
"3. That minor be continued on supervised probation for an indefinite period of time.
"4. That form 200, Order Establishing Conditions of Probation, signed by minor on November 26, 1975 be continued in full force and effect.
"5. That minor's legal residence be found to be the County of Sonoma.
"6. That wardship of said minor be transferred to the County of Sonoma.
"7. That minor be detained in Marin County Juvenile Hall pending transfer in custody to Sonoma County." (Italics added.)
Since the date of the order Sonoma County has accepted Ramona's transfer, but unwillingly, and under what appears to be the compulsion of Welfare and Institutions Code section 750 and Lassen County v. Superior Court, 158 Cal. App.2d 74 [322 P.2d 49].
*949 As permitted by Welfare and Institutions Code section 754, Sonoma County has appealed from that portion of the Marin County Juvenile Court's order "which finds that said minor was a resident of Sonoma County and transfers said proceedings to Sonoma County." It is this appeal which is presently before us.
Sonoma County states the issues of its appeal in this manner: "The sole question is the residence of the minor and whether Marin or Sonoma County should bear the administrative and financial burdens of wardship. There is no element affecting the interests or welfare of the minor nor is there any change in the custody or control of the minor involved in this appeal."
We are concerned with two statutes, Welfare and Institutions Code sections 17.1 and 750.
Section 17.1 was amended in 1975, to become operative January 1, 1976. It will be noted that it became effective after the filing of the subject supplemental petition, but before the January 7, 1976, hearing and order thereon. The parties appear to concede, we think correctly, that the amended section is here applicable. Reference hereafter to section 17.1, unless otherwise noted, will be to the statute as amended.
As pertinent to our inquiry section 17.1 provides:
"[T]he residence of a minor person shall be determined by the following rules:
"(a) [1] The residence of the parent with whom a child maintains his or her place of abode or [2] the residence of any individual ... who has been given the care or custody by a court of competent jurisdiction, determines the residence of the child.
"(b) Wherever in this section it is provided that the residence of a child is determined by the residence of the person who has custody, `custody' means the legal right to custody of the child...." (Italics added.)
Section 750 specifies the circumstances under which the juvenile court of one county is permitted to transfer a juvenile wardship proceeding to another county. It states:
"Whenever a petition is filed in the juvenile court of a county other than the residence of the person named in the petition, or whenever, *950 subsequent to the filing of a petition in the juvenile court of the county where such minor resides, the residence of the person who would be legally entitled to the custody of such minor were it not for the existence of a court order issued pursuant to this chapter[[2]] is changed to another county, the entire case may be transferred to the juvenile court of the county wherein such person then resides at any time after the court has made a finding of the facts upon which it has exercised its jurisdiction over such minor, and the juvenile court of the county wherein such person then resides shall take jurisdiction of the case upon the receipt and filing with it of such finding of the facts and an order transferring the case."
It will be seen that such a transfer is permitted only (1) where the petition is filed in a county other than that in which the minor resides, or (2) where, subsequent to such filing, the residence of the person "legally entitled to the custody of such minor" is changed to another county.
Our first inquiry is whether the Marin County Juvenile Court's finding that the "minor's legal residence [is] found to be the County of Sonoma," is supported by the uncontroverted record, and is otherwise in accordance with law.
We advert to section 17.1's first test of the place of a minor's residence, i.e., the residence of the parent with whom the minor maintains a "place of abode."
Webster's New International Dictionary (3d ed. 1971) defines the word "abode" as: "... 2: continued stay in a place: residence, sojourn (during one's [abode] in the country) 3: place where one abides or dwells: home (a cottage became their [abode])." Black's Law Dictionary (4th rev.ed. 1968) ascribes to it the meaning of: "One's home; habitation; place of dwelling; or residence."
As we have noted, her father's Marin County home became Ramona's "place of abode" on October 10, 1975. She then ran away, but when she arrived at her mother's residence a few days later she was promptly *951 returned to her father's home in Marin County. Ramona was then adjudged a ward of the Marin County Juvenile Court, and "placed in the family home [i.e., her father's Marin County home]." She continued her abode in the "family home," until December 10, 1975, when she again ran away. Two days later on her appearance in Sonoma County she was, on the same day, returned to Marin County Juvenile Hall.
(1) Under these uncontroverted facts the only reasonable inference to be drawn was that Ramona's "place of abode" and thus her residence, was in Marin County at the time of the juvenile court proceedings.
We consider now Welfare and Institutions Code section 17.1's alternative criterion of a minor's residence, i.e., "the residence of the person who has ... the legal right to custody of the child...." Here it was Ramona's father who had the right to such custody. Under this test also, Ramona's residence was in Marin County at the time of the subject juvenile court proceedings.
Thus, contrary to the juvenile court's finding, the uncontroverted evidence conclusively established that Ramona was not a resident of Sonoma County, but was instead a resident of Marin County where her wardship proceedings were pending.[3]
We turn our attention now to Welfare and Institutions Code section 750. As indicated, it first permits transfer of a juvenile court proceeding when the petition is filed in "a county other than" that of the minor's residence. (2) That provision is obviously inapposite for, as pointed out, Ramona at the time of the filing of both the initial and supplemental section 601 petitions was a resident of Marin County. Section 750's alternative justification for a transfer is likewise inapplicable, for Ramona's father, the person "legally entitled to the custody of such minor," was also a resident of Marin County.
Marin County appears to contend that since it was proper to "place" a juvenile under its jurisdiction in another county, the order of its juvenile *952 court placing Ramona with her mother in Sonoma County established her "place of abode" and thus her "residence," in that county.
(3) Of course, it is proper for the juvenile court of one county to "place" a minor ward of the court in another county when such placement is found to be in the best interest of the minor. (See Welf. & Inst. Code, § 755.) But it is patently contrary to sound policy and the relevant statutes to permit one county to shift the administrative and financial burden of a juvenile court wardship to another county, at a time when the minor's residence remains in the former county according to either of the criteria of Welfare and Institutions Code section 17.1.
For these several reasons we find merit in the appeal of Sonoma County.
The juvenile court's order of January 7, 1976, insofar as it "finds that said minor was a resident of Sonoma County and transfers said proceedings to Sonoma County," is reversed.
Molinari, P.J., and Sims, J., concurred.
NOTES
[1] Marin County places no legal or other reliance or effect upon this writing.
[2] In re Grimmer, 259 Cal. App.2d 840 [66 Cal. Rptr. 816], held that upon the granting of a Welfare and Institutions Code section 601 petition, the juvenile court, and not the person who previously had been awarded custody, was legally entitled to the "custody" of its juvenile ward. Welfare and Institutions Code section 750 was thereafter (1968) amended, apparently to make clear that for the purpose of the section the person "legally entitled to the custody" meant the individual having such custody prior to the juvenile court order.
[3] Welfare and Institutions Code section 17.1, before its amendment operative January 1, 1976, and as in effect at the time of the filing of Ramona's Welfare and Institutions Code section 601 petitions, provided: "The residence of the father determines that of the child during the lifetime of the father, unless the father ... is in fact living separate and apart from the mother of the child; in the latter case the residence of the child is determined by the residence of the parent who has his custody." Had this section, arguendo, been applicable to the proceedings, it also would have required a finding that Ramona's place of residence was Marin County.