[Civ. No. 16989. Fourth Dist., Div. One. Aug. 23, 1978.]

In re ELEANOR A., a Person Coming Under the Juvenile Court Law. COUNTY OF SAN DIEGO, Plaintiff and Respondent, v. COUNTY OF SAN BERNARDINO, Defendant and Appellant; ELEANOR A., Real Party in Interest and Respondent.

## COUNSEL

Alan K. Marks, County Counsel, and Richard Wm. Strong, Deputy County Counsel, for Defendant and Appellant.

Donald L. Clark, County Counsel, and Arlene Prater, Deputy County Counsel, for Plaintiff and Respondent.

Appellate Defenders, Inc., under appointment by the Court of Appeal, Paul Bell and Dennis Finn for Real Party in Interest and Respondent.

## OPINION

**STANIFORTH, J.**—The Juvenile Court, San Diego County, found its 15-year-old ward Eleanor A. to be a resident of San Bernardino County. Based upon this factual finding the juvenile court ordered the transfer of Eleanor A.'s cause to San Bernardino County. On appeal the County of San Bernardino challenges this finding and the order of transfer based thereon. San Bernardino's appeal is authorized by statute (Welf. & Inst. Code, § 379) and case authority (*Lassen County* v. *Superior Court,* 158 Cal.App.2d 74 [322 P.2d 49]).

San Bernardino points out that Eleanor was placed in San Bernardino County by an order of the San Diego County Juvenile Court. She did not enter that county voluntarily, nor did she establish a legal residence in San Bernardino County. Eleanor was not present and not represented at the juvenile court hearing. She here contends she was entitled to counsel, for the hearing involved her welfare. She seeks reversal on those grounds. (Welf. & Inst. Code, § 317.)

### FACTS

Eleanor A. is a 15-year-old (born Oct. 3, 1962) developmentally disabled girl. She has been determined to have an I.Q. between 18 and 30. Eleanor also has physical disabilities. She is unable to communicate verbally or nonverbally. She does not dress herself or care for her personal hygiene. She does feed herself and is toilet trained. Prognosis for her improvement is poor. She will probably be living for the rest of her life in an institutional setting. Her current placement facility is geared to children in Eleanor's I.Q. range and will in the near future be caring for

adults as well as children. The San Diego County Department of Public Welfare felt Eleanor's placement could best be supervised by the County of San Bernardino.

Eleanor's father died in July of 1972 and her mother is an alien illegally in the United States who left California at an undetermined date and is now thought to be in the State of Washington.

Eleanor was originally declared a dependent child of the San Diego County Juvenile Court in 1966 under Welfare and Institutions Code section 600, subdivision (a). She was placed in a foster home from 1966 through 1970 and then placed in various institutions. From October 1972 until August 1974 Eleanor was placed at the Arrowhead Home for Exceptional Children in San Bernardino County. In August 1974 she was placed at the Intercommunity Exceptional Children's Home in Bloomington, California, where she remains at the present.

ISSUES

The general rules governing residence of a minor are found in California Government Code sections 243 and 244, subdivisions (d) and (e).[1] More specific and controlling here is Welfare and Institutions Code section 17.1 which provides:

"Unless otherwise provided under the provisions of this code, to the extent not in conflict with the federal law, the residence of a minor person shall be determined by the following rules:

"(a) The residence of the parent with whom a child maintains his or her place of abode or the residence of any individual who has been appointed legal guardian or the individual who has been given the care or custody by a court of competent jurisdiction, determines the residence of the child.

"(b) Wherever in this section it is provided that the residence of a child is determined by the residence of the person who has custody, 'custody' means the legal right to custody of the child unless that right is held

---

[1]Government Code section 244, subdivisions (d) and (e) provide in pertinent part:

"(d) The residence of the parent with whom an unmarried minor child maintains his or her place of abode is the residence of such unmarried minor child.

"(e) The residence of an unmarried minor who has a parent living cannot be changed by his or her own act."

jointly by two or more persons, in which case 'custody' means the physical custody of the child by one of the persons sharing the right to custody.

"(c) The residence of a foundling shall be deemed to be that of the county in which the child is found.

"(d) If the residence of the child is not determined under (a), (b), (c) or (e) hereof, the county in which the child is living shall be deemed the county of residence, if and when the child has had a physical presence in the county for one year.

"(e) If the child has been declared permanently free from the custody and control of his or her parents, his or her residence is the county in which the court issuing the order is situated."

San Diego argues a literal reading of Welfare and Institutions Code section 17.1, subdivision (d) determines the residence of Eleanor to be in San Bernardino County, where the child had "physical presence in the county [San Bernardino] for one year."

San Bernardino disputes the applicability of 17.1, subdivision (d) and contends that 17.1, subdivision (e) applies—making San Diego the county of residence—where a San Diego court order is issued declaring a child "permanently free from the custody and control of his or her parents."

The Juvenile Court of San Diego County, on October 10, 1972, ordered "that said minor's [Eleanor's] custody be taken from her parent or guardian pursuant to Section 726(c) . . . ." San Diego argues that the word "permanently" excludes the taking of a ward or dependent child from the physical custody of her parents or guardian under section 726 of the Welfare and Institutions Code but rather "refers to the civil proceedings to declare a minor permanently free from the custody and control of her parents" pursuant to Civil Code section 232.

San Diego's reasoning is not persuasive. In the first place, neither Welfare and Institutions Code section 726 nor Civil Code section 232 speak in terms of "permanently" depriving the parents of custody and control or of physical custody of a child. More persuasive is the fact that the express language of section 17.1 precludes determination of the minor's residence by reference to the Civil Code section 232 free from custody proceedings. Section 17.1 states: "Unless otherwise provided

*under the provisions of this code . . .* the residence of a minor person shall be determined by the following rules . . . ." (Italics added.) We interpret this declarative statement to require resolution of a residence question within section 17.1 of the Welfare and Institutions Code. ▮ Therefore, we look first for an answer to the residence question within the four corners of section 17.1 and note that section 17.1, subdivision (e) determines the residence to be the county in which the juvenile court issued the order declaring the child *permanently* free from custody and control of her parents.

The term "permanently" has been defined as "fixed," "continuing," "lasting," "stable," "enduring," and generally opposed in the law to "temporary," but not always meaning "perpetual." (Black's Law Dict. (4th ed.) pp. 1297-1298.) "Permanent" is not the equivalent of perpetual or unending or lifelong or unchangeable (*Soule* v. *Soule,* 4 Cal.App. 97 [87 P. 205]) or existing forever (*Hasman* v. *Union High School,* 76 Cal.App. 629 [245 P. 464]). ▮ Thus, the word "permanent" or "permanently" when used in an order giving "permanent custody" of a child found by a court to be a dependent child, means exclusive care from the date of the order to the end of the child's minority, unless the order is earlier modified. (*Ex parte Walters* 92 Okla.Crim. 1 [221 P.2d 659, 663-664]; *Parrish* v. *Hainlen* 124 Colo. 229 [236 P.2d 115, 118].)

We conclude that the term "permanently" as used in section 17.1, subdivision (e) means "fixed" and "abiding" for such period of time as is necessary to the accomplishment of the objective of the free from custody order. It is an antonym of "temporary," but does not necessarily mean perpetual or forever. A parental loss of custody under section 726, subdivision (c) is a nonconclusive or nonperpetual loss (*In re Norma M.,* 53 Cal.App.3d 344, 346 [125 Cal.Rptr. 721]), yet it is a permanent order.

Our conclusion as regards the legislative intent expressed in section 17.1, subdivision (e), vis-a-vis section 17.1, subdivision (d), is buttressed by these further facts and applicable law.

Eleanor's placement in San Bernardino County by the San Diego court was authorized by section 380 of the Welfare and Institutions Code, which provides: "Any person adjudged to be a dependent child of the juvenile court may be permitted by order of the court to reside in a county other than the county of his legal residence, and *the court shall retain jurisdiction over such person.*

"Whenever a dependent child of the juvenile court is permitted to reside in a county other than the county of his legal residence, *he may be placed under the supervision of the probation officer of the county of actual residence, with the consent of such probation officer.* The dependent child shall comply with the instructions of such probation officer and upon failure to do so *shall be returned to the county of his legal residence for further hearing and order of the court.*" (Italics added.)

Until placed in an institutional facility by order of the San Diego court, Eleanor had no connection with the County of San Bernardino. The specific retentions of jurisdiction under Welfare and Institutions Code section 380, by the Juvenile Court of San Diego County over Eleanor, indicates an unmistakable legislative intent that a child placed out of the county for therapeutic purposes by order of the juvenile court does not thereby, and the passage of one year, cease to be a legal resident of the county of origin and become a resident of the county where lodged.

▮ San Bernardino County accepted Eleanor's placement solely as an accommodation and with the specific statutory assurance that jurisdiction would remain in the County of San Diego as provided in the orders of placement. The Legislature did not intend that one county could relieve itself of its duties of care toward a resident indigent dependent child by placing the minor in a different county, under Welfare and Institutions Code section 380, and after the passage of one year, permanently transferring the minor and the accompanying duty of care to a different county. Such a construction of section 17.1, subdivision (d) and 17.1, subdivision (e) in light of Welfare and Institutions Code section 380 would certainly result in an immediate termination of permissive placements out of county under section 380 even under circumstances where the minor would substantially benefit from placement in a special facility in another county. We do not presume such a destructive intent upon the part of the Legislature. In *In re Ramona S.,* 64 Cal.App.3d 945, 952 [134 Cal.Rptr. 881], the court observed: "Of course, it is proper for the juvenile court of one county to 'place' a minor ward of the court in another county when such placement is found to be in the best interest of the minor. [Citation.] But it is patently contrary to sound policy and the relevant statutes to permit one county to shift the administrative and financial burden of a juvenile court wardship to another county, at a time when the minor's residence remains in the former county according to either of the criteria of Welfare and Institutions Code section 17.1."

We conclude that the order of October 10, 1972, "permanently" removed Eleanor from the custody and control of her parents within the meaning of section 17.1, subdivision (e). Therefore, her county of residence is San Diego County, "the county in which the court issuing the order is situated." (Welf. & Inst. Code, § 17.1, subd. (e).) There is no evidence of Eleanor's intent to become a resident of the County of San Bernardino, nor did she derive residence there through her parents. Her only living relatives are thought to be in the State of Washington.

In view of the reversal required, for the benefit of the court on return of this matter for further proceedings, we point out that the interests of Eleanor are very much in the crucible in these proceedings. ■ We hold that it is error in a matter of such grave and long-term importance to the child to fail to appoint counsel to protect her interest. (*In re Richard E.,* 21 Cal.3d 349 [146 Cal.Rptr. 604, 579 P.2d 495].)

Judgment reversed.

Brown (Gerald), P. J., and Welsh, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.