[Civ. No. 57895. Second Dist., Div. Two. Dec. 12, 1980.]

NATIONAL KINNEY OF CALIFORNIA, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
MOISES CASILLAS, Respondents.

**COUNSEL**

Kendig, Stockwell & Gleason and John W. Cairns for Petitioner.

Rostagno & Jensen and James A. Jensen for Respondents.

OPINION

**ROTH, P. J.**—Petitioner National Kinney of California (Kinney) contends that respondent Workers' Compensation Appeals Board (Board) erred in that it computed respondent employee's permanent disability based upon a higher occupational classification than that to which the employee was entitled. We affirm the Board's decision.

I

 Initially, respondent employee, Moises Casillas, (hereinafter also applicant) asserts that the court is without jurisdiction to review this matter as Kinney's petition for writ of review was not timely filed as it was initially filed by Kinney in the wrong appellate district and not transferred to the correct appellate district until after the period for filing a petition for writ of review had lapsed.

A petition for "writ of review must be made within 45 days after a petition for reconsideration is denied, or, if a petition is granted or if reconsideration is had on the appeal board's own motion, within 45 days after the filing of the order, decision, or award following reconsideration." (Lab. Code, § 5950.) Failure to file within the 45-day period provided by Labor Code section 5950 deprives the court of jurisdiction. (*Litzmann v. Workmen's Comp. App. Bd.* (1968) 266 Cal. App.2d 203 [71 Cal.Rptr. 731]; *Nat. Auto. Ins. Co. v. Ind. Acc. Com.* (*Ough*) (1943) 58 Cal.App.2d 508, 509 [136 P.2d 815].)

The Board's "Opinion and Orders Denying Petitions for Reconsideration," from which Kinney petitions for a writ of review, was dated, filed and served by the Board on August 23, 1979. The 45th day was Sunday, October 7, 1979; accordingly, the petition was required to be filed with the court no later than Monday, October 8, 1979. (*Alford v. Industrial Accident Com.* (1946) 28 Cal.2d 198, 201 [169 P.2d 641].)

Kinney concedes that it is a resident of Los Angeles County and thus a resident of the Second Appellate District. (Gov. Code, § 69100.) Labor Code section 5950 expressly states a petition for writ of review is to be filed in "the Supreme Court or . . . court of appeal for the appellate district in which [the petitioner] resides."

Kinney, however, erroneously filed the petition for writ of review with the Fourth Appellate District on October 3, 1979. The Fourth Appel-

late District accepted the petition for filing without apparent objection. This filing was within the 45-day filing period. Kinney's counsel discovered this mistake and wrote to the Fourth Appellate District on October 29, 1979, and requested transfer of the matter to the Second Appellate District. The clerk of the Fourth Appellate District, per letter dated November 2, 1979, requested that the Supreme Court transfer the matter to the Second Appellate District. (Cal. Const., art. VI, § 12; Cal. Rules of Court, rules 1, 20.) The matter was transferred by the Supreme Court to the Second Appellate District per order filed November 8, 1979. It was not until after such transfer had been effected that applicant for the first time asserted that the petition should be denied as untimely filed.

Applicant's position is that the filing of a petition for writ of review in the correct appellate district is a jurisdictional matter. Thus, applicant maintains, as Kinney neither requested transfer of the petition nor was the petition actually transferred *until after* the jurisdictional 45-day period had lapsed, the petition must be dismissed as untimely filed.

It is true that a petition for writ of review *must* be filed within the 45-day period following the Board's decision and such period is jurisdictional. Thus, as previously stated, failure to timely file the petition for writ of review requires dismissal of the petition. (*Litzmann* v. *Workmen's Comp. App. Bd., supra,* 266 Cal.App.2d 203; *Nat. Auto. Ins. Co.* v. *Ind. Acc. Com. (Ough), supra,* 58 Cal.App.2d 508, 509.) This does not mean, however, that the requirement of filing in the appellate district of residence is also a jurisdictional requirement of a similar mold.

Labor Code sections 5950-5956 pertain to judicial review of Board decisions. Not all of these provisions are mandatory in that failure of the petitioner to comply with them necessarily deprives the court of jurisdiction. (See 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 3.) For example, the requirements of Labor Code section 5954 that a copy of the petition for writ of review be served upon all adverse parties is more directory than mandatory. Thus, the court is not deprived of jurisdiction by the petitioner's failure to serve a copy of the petition for writ of review on all respondents until after the filing of or until after the expiration of the jurisdictional filing period for the petition for writ of review. (*Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953) 40 Cal. 2d 102, 127-129 [251 P.2d 955]; but see Cal. Rules of Court, rule 57.)

In *Argonaut Ins. Co.* v. *Workmen's Comp. App. Bd.* (*Helm*) (1967) 247 Cal.App.2d 669 [55 Cal.Rptr. 810], the petitioner, an insurance carrier, filed a petition for writ of review in the Fourth Appellate District (Div. Two) even though it was not a resident of that district. Addressing this issue, the court stated: "Jurisdiction of this court to consider this petition for a writ of review was questioned initially on the ground that petitioner is not a resident of this appellate district within the meaning of section 5950 of the Labor Code. Nevertheless, petitioner maintains that section 5950 of the Labor Code has never been enforced because petitioner consistently has been permitted to file in districts other than that of its residence; that section 5950 of the Labor Code goes to the question of venue and not jurisdiction; that many factors are related to the Fourth District so that, in fairness to all concerned, the matter should be heard by this court. Specifically, the employer, the injured employee, and the local office of petitioner[1] are all located within this district. Moreover, the injury which gave rise to the claim and the original proceedings for disposition of the applicant's claim occurred within this district. Such a combination of factors is sufficient to confer *jurisdiction and venue* in this tribunal." (Italics added.) (*Argonaut Ins. Co., supra,* 247 Cal.App.2d at pp. 671-672.)[2]

■ If the filing of a petition for writ of review in the appellate district of residence is a mandatory jurisdictional requirement, the court in

---

[1]From this statement we interpret the court in *Argonaut Ins. Co.* to mean that the mere location of a local office does not make an insurance carrier a resident of an appellate district.

[2]The record herein states no basis sufficient to view the Fourth Appellate District as proper venue. Kinney and applicant are residents of the Second Appellate District; the injury occurred and all the original appeals board proceedings were held in the Second Appellate District. The only connection with the Fourth Appellate District is that Kinney's counsel have their office there; this alone is insufficient to impose venue in the Fourth Appellate District.

We also observe the fact that original appeals board proceedings may have been held within a particular appellate district does not guarantee that any party is a resident of that appellate district or that the injury occurred within that appellate district. In proceedings before the appeals board "there is no prohibition against an attorney or representative filing a claim with any office within the State of California for his own convenience, and regardless of where the injured workman resides or the employer is located, or where most of the witnesses will be located." (St. Clair, Cal. Workers' Compensation Law and Practice (1980) ch. 16.4, p. 323.) "The purpose of the so-called 'open venue' administrative policy presently in existence [as adopted by the Administrative Director of the Division of Industrial Accidents], is apparently to provide injured workers with the best caliber of attorneys and representatives, as well as a full choice of such attorneys. The assumption of the policy is that attorneys would refuse to handle a worker's case if they were forced to file that case in an office where they usually do not appear and outside their regular territory." (St. Clair, Cal. Workers' Compensation Law and Practice, *supra,* ch. 16.4, p. 324.)

*Argonaut Ins. Co.* could not have found a substitute basis for residency by examining all the contacts in the case to the Fourth District. Accordingly, residency of the petitioner, pursuant to Labor Code section 5950, is a directory requirement rather than mandatory for purposes of jurisdiction. Thus, the filing of petition for writ of review in the incorrect appellate district, where the petition is otherwise timely filed, does not deprive that court of jurisdiction. Upon discovery of the error, the appropriate procedure is for that appellate district to request the Supreme Court to transfer the matter to the correct appellate district. (Cal. Const., art. VI, § 12; Cal. Rules of Court, rules 1, 20.) This was the procedure followed herein. Once so transferred by order of the Supreme Court the "court to which a cause is transferred has jurisdiction." (Cal. Const., art. VI, § 12.)

This is not to say, however, that the clerk of an appellate district may not question the appropriateness of filing in that appellate district. The petition for writ of review should state the petitioner's county of residence (as opposed to a statement that the petitioner is a resident of that judicial district); and, if the petitioner is not a resident of a county within that appellate district, the petition must state the factors which are claimed to establish a sufficient basis for filing in that district.

## II

Concluding that the cause herein is properly before this court, we now reach the merits of the question presented by the petition.

The dispute herein concerns the classification of applicant's occupational duties. The importance of this classification is that the percentage of permanent disability is a function of the part of the body injured, the extent of physical disability or impairment, the age of the employee at the time of injury, and the injured's occupation at the time of injury. (Lab. Code, § 4660; 1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1980) §§ 11.02-11.03; 1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed. 1978) §§ 7.2-7.36; St. Clair, Cal. Workers' Compensation Law and Practice (1980) ch. 8.4, 8.7; Cal. Workmen's Compensation Practice (Cont.Ed. Bar 1973) §§ 15.7-15.27; Welch, Fundamentals for Applying Cal. Schedule for Rating Permanent Disabilities (1975); see e.g., *Morgan* v. *Workers' Comp. Appeals Bd.* (1978) 85 Cal.App.3d 710, 713-715 [149 Cal.Rptr. 736].)

Kinney admits applicant was a tree trimmer, but only as an occupational group No. 1; applicant asserts his duties as a tree trimmer brought him within occupational group No. 30. Utilization of occupational group No. 1 results in a 30 percent permanent disability rating ($8,452.50); application of occupational group No. 30 results in a 38 percent permanent disability rating ($11,812.50).

The "Schedule for Rating Permanent Disabilities Under the Provisions of the Labor Code of the State of California" (Rating Schedule), contains a "List of Occupations and Occupational Group Numbers." (Rating Schedule, pp. 16-34.) A "tree pruner or trimmer (low level)" in the agricultural industry is listed as an occupational group No. 1 (Rating Schedule, p. 33). A "tree surgeon" is an occupational group No. 30; a "tree topper" engaged in logging operations is an occupational group No. 30. (*Ibid.*)

The "1950 Schedule-Outline of Occupational Groupings" (as rev. eff. Jan. 1, 1961) defines occupational group No. 1 as follows: "Laborer-heavy-unskilled in any special particular. *Group characteristics*: Heavy arduousness, stands and stoops frequently, walks short distances, may occasionally climb stairs, ramps or ladders, frequently reaches above or below shoulders, frequently lifts, carries, and handles heavy tools or materials, or swings shovel, pickax, sledge hammer, or other tool, frequently pushes and pulls heavy materials."

The 1950 Schedule-Outline of Occupational Groupings describes occupational group No. 30 as follows: "High and ground level operations-climbing. *Group characteristics*: Constantly stand at various work locations, (walks from one location to another, frequently climbs on high structures or poles) requiring sense of balance; intermittently stoops, crouches and kneels; constantly handles and fingers tools and materials; frequently reaches above shoulders, swings hammer, lifts and carries heavy materials; pushes and pulls. Very heavy arduousness."

At the hearing on this matter, admitted into evidence at Kinney's request was a written job description which stated in pertinent part:

"· · · · · · · · · · · · ·

"2. Job Title: Tree-trimmer

"· · · · · · · · · · · · ·

"5. Job Summary: A tree trimmer mows the grounds on a riding mower, trims shrubbery with hand and electric tools and trims trees using ladders and/or a safety harness and hand or electric tools. He chops down trees when necessary. He assists in the planting of shrubbery, ivy, and all annual flowers during the planting season. He assists in hauling away any debris.

"6. Description of Tasks:

"A tree trimmer: 1. Cuts limbs off trees with electric saws weighing up to 25 lbs. from ground level; 2. Cuts limbs and trims trees while on ladder & holding appropriate saw; 3. Cuts limbs & trims trees while harnessed in tree and holding appropriate saw; 4. Mows grounds on riding mower; 5. Trims hedges & shrubbery with electric and hand tools; 6. Cleans debris; 7. Plants young trees, shrubs and flower bulbs and seeds during planting season.

"NOTE: Usually a worker either mows all day or trims trees, hedges all day long, depending on what is needed.

".. . . . . . . . . . . . . . .

"9. Physical Demands: A. Strength:

"1. Standing: Stands while cutting down tree limbs from the ground with a long electric saw (probable maximum 5 minutes). Stands while trimming hedges with electric trimmers (probable maximum 2 minutes).

"2. Walking: Walks along hedges one step at a time while trimming up to all day (with breaks and lunch).

"3. . . . . . . . . . . . . .

"4. Lifting: Lifts power tools weighing up to approximately 25-30 lbs. when necessary; lifts hand tools such as ax, sledge hammer, shovel weighing up to about 40 lbs.; lifts bundles of debris weighing up to 50 lbs. (about 6 times an hour).

"5. Carrying: Carries up to 50 lb. bundles of debris to bin in back of truck (up to about 20 feet). Carries tools to and from truck (up to about 20 feet).

"6. . . . . . . . . . . . . .

"7. Pulling: May pull limbs occasionally, weighing approximately 50 lbs.

"8. Climbing: Climbs ladders and tree limbs when necessary (off and on all day when trimming trees).

"9. Balancing: Balances on ladders when necessary while trimming trees; balances in trees in whatever manner is best when necessary to trim them.

"10. Stooping: (bending at waist) Stoops to rake leaves (all day when raking); stoops to trim low sections of hedge (when trimming hedges), trimmer will stand for approximately 2 minutes and then stoop for approximately 2 minutes; this process continues throughout the entire day whenever trimming hedges.

"11. Kneeling: (bending at knees) Kneels during the planting season while planting shrubbery, ivy and annual flowers throughout the entire day.

"12. Crouching: (bending at knees and waist) Crouches while planting shrubbery, ivy and annual flowers during the planting season through the entire day; crouches to pick up debris under shrubbery after trimming for up to 3 minutes (approximately).

"13. . . . . . . . . . . . . .

"14. Twisting: Twists back and forth slowly, evenly and constantly (in a rainbow figure) through the entire day while trimming hedges.

"15. Reaching: Reaches up with arms outstretched with electric saws weighing from 15-20 lbs. to limbs when pruning limbs from the ground; reaches out to limbs at whatever length necessary (maximum-arm's length) when sitting in tree or standing on ladder to prune limbs; reaches up to tall shrubbery to trim hedges holding 15 lb. electric hedge trimmers.

"16. Handling: Handles electric and hand tools, tree limbs, hedges, and debris cut from trees and hedges, during planting season, flower bulbs & seeds, and young trees and shrubbery to be planted.

" . . . . . . . . . . . . . . .

"10. Environmental Exposure: A. [100% outside]

" . . . . . . . . . . . . . . .

"E. Hazards: Tree-trimmer is using electric tools, falling limbs; at times, tree-trimmer is harnessed in trees; ladder hazards.

" . . . . . . . . . . . . . . .

"11. Machines, Tools, Equipment and Work Aids: Mowers, ax, shovel, sledge hammer, ladder, electric hedge trimmer, electric saws of varying sizes (15-25 lbs.), hand pruners, rake, safety harness (worker wears while in trees).

"12. Materials and Products: Trees, shrubs, flowers, flower bulbs and seeds, debris from plants.

"13. General Comments: Each worker is told to only pick up the amount he can manage as long as he does his share of the work."

According to applicant, he would trim trees while on a ladder to about 24 feet off the ground. In so working, he would utilize a two-part ladder and tie himself to the tree branches as a safety measure. Applicant did not indicate how frequently he would do this.

The workers' compensation judge found that applicant's industrial back injury precludes him from "heavy lifting or repetitive bending." The disability evaluation specialist (rater) computed these factors of disability as a 25 percent standard rating. The rater utilized occupational group No. 1 which resulted in the disability percentage being adjusted for occupation to 30 percent. The age adjustment resulted in the recommended final permanent disability rating of 30 percent.

Upon cross-examination the rater stated that the job duty description prepared by Kinney justified the occupational group No. 1 classification. The rater acknowledged that the higher occupational classification would be appropriate for someone who trimmed trees 24 feet off the ground; the rater, however, maintained that in order to be eligible for the higher classification the employee would have to work within that

classification "25 to 35 percent of the time, [that is,] approximately one-third of the time." The rater stated that as here applicant did not indicate how frequently he worked at the 24-foot level there was insufficient information to allow the higher classification.

The workers' compensation judge accepted the rater's recommended rating. The judge thus rejected applicant's claim to the higher occupational group classification; the judge reasoning that "Any high level tree trimming would appear to be minimal or only incidental to the majority of the employee's duties which clearly do not involve anything other than low level tree trimming, mowing of lawns, planting of young trees and shrubs, trimming of shrubbery and handling of debris."

Upon applicant's petition for reconsideration, the Board reversed the judge. Finding applicant entitled to a rating using occupational group No. 30, the Board reasoned: "Applicant was employed by [Kinney] as a tree trimmer. According to the job description [offered into evidence by Kinney], a tree trimmer in addition to duties at ground level must cut limbs while standing on the ladder and holding a saw and also cut limbs and trims trees '. . . while harnessed in tree and holding appropriate saw.' In terms of physical requirements a tree trimmer must, among other things, 'balance in trees in whatever manner is best when necessary to trim them' and 'climb ladders and tree limbs when necessary. . . .' [¶] Applicant testified that he would trim from heights of up to 24 feet off of a two-part ladder and he verified the job description as being correct. [¶]. . . .

"In *Dalen* v. *WCAB* [26 Cal.App.3d 497], 37 CCC 393 (1972), the Court of Appeal held that a worker who is engaged in a dual occupation is entitled to be rated in the highest occupational grouping. In this case the job description clearly calls for activities not contemplated by group 1 which is basically heavy labor at ground level. . . .

"While [the] description [of occupational group No. 1] clearly fits some of applicant's duties, some of the duties do not fit into this category. Occupations in which workers must climb to any more than a minimal height or work in positions off the ground contemplate other occupational groups. For example, group 29 through 33 of the schedule which includes such diverse occupations as ironworkers, lineman, tree surgeons, carpenters, electricians, roofers, pipe workers, painters, window cleaners, and others all contemplate some heavy work at above ground level.

"*Dalen, supra*, does not set forth any particular time requirement for the activities engaged in. Where the activities are an integral part of the worker's occupation, as they are here, the worker is entitled to the higher occupational group and the variant that results therefrom. In this case we believe that group 30 most accurately reflects applicant's dual duties...."

### III

"The employee is entitled to be rated for the occupation which carries the highest factor in the computation of disability. Labor Code section 3202 provides that the provisions of the Workmen's Compensation Act 'shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment.' It has been determined that where the duties of the employee embrace the duties of two forms of occupation, the rating should be for the occupation which carries the higher percentage. (See *Stocker v. Brea Grammar School District* (1932) 18 I.A.C. 32.)" (*Dalen v. Workmen's Comp. Appeals Bd.* (1972) 26 Cal.App.3d 497, 505-506 [103 Cal.Rptr. 128]; see Buch, *The Role of an Occupational Variant in Determining Permanent Disability Under California Workers' Compensation Law* (1980) 15 Cal. Western L.Rev. 369.)

The judge reasoned that applicant's performance of high level tree trimming did not justify the higher occupational classification as such activities were merely "incidental to the majority of the employee's duties." In the proper sense, acts "incidental to employment" do not refer to actual employment duties but rather refer to "acts, though not themselves representing a manipulation of the instrumentalities of the work, [which] are reasonably incidental to the employment or impliedly contemplated by it, and are considered to be for the mutual benefit and convenience of employer and employee." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *op.cit. supra*, § 9.02 [2] [a].) Thus, "Acts necessary for the employee's life, comfort and convenience while at work, although strictly personal to himself, are incidental to his services, and injuries sustained in the performance of such acts arise out of and in the course of employment." (*Ibid.*)

For example, an election official injured while obtaining a glass of water for a fainted coemployee (*County of L. A. v. Industrial Acc. Com.* (1928) 89 Cal.App. 736 [265 P. 362]), an employee injured while in the employer's parking lot attempting to help start a fellow employ-

ee's stalled car (*North American Rockwell Corp.* v. *Workmen's Comp. App. Bd.* (1970) 9 Cal.App.3d 154 [87 Cal.Rptr. 774]), and a janitor injured while on the employer's premises making a small bench so he could have a place to sit and eat during his lunch break (*Lizama* v. *Workmen's Comp. Appeals Bd.* (1974) 40 Cal.App.3d 363 [115 Cal. Rptr. 267]), are all injuries held compensable as "incidental" to the employment. This does not mean, however, that each of the above injured employees are to be rated on the basis of the respective occupations of nurse, automobile mechanic and carpenter. While such activities were "incidental" to the employment, they were not part of each employee's occupational duties for purposes of permanent disability rating.

Thus, here, the judge's labeling of high level tree trimming as merely "incidental" to applicant's employment duties is incorrect. (Buch, *The Role of an Occupational Variant in Determining Permanent Disability Under California Worker's Compensation Law, supra,* 15 Cal. Western L.Rev. at pp. 380-381.)

Here, as the Board observes, the above quoted job description demonstrates that applicant climbed ladders and utilized a harness to trim trees. Further, applicant testified, without contradiction, that he climbed ladders up to 24 feet in his work trimming trees.

The Board has correctly noted that to be entitled to the higher classification of group No. 30 no precise percentage of time for working at heights is required but rather the pertinent inquiry is whether working at heights is an *"integral part of the worker's occupation."* Thus, as working at heights was here a required part of applicant's duties as assigned by the employer, applicant is entitled to the higher occupational variant.

The decision of the Board is therefore affirmed. The parties shall bear their own costs.

Compton, J., and Beach, J., concurred.