[Nos. F006353, F006354 and F006355. Fifth Dist. Dec. 26, 1986.]

In re LISA E. et al., Persons Coming Under the Juvenile Court Law.
FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff
and Respondent, v.
IRENE H., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Scott W. Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Max E. Robinson, County Counsel, and Vincent J. McGraw, Deputy County Counsel, for Plaintiff and Respondent.

Marsha Perkes, under appointment by the Court of Appeal, for Minors.

**OPINION**

**BALLANTYNE, J.—**

### INTRODUCTION

A Fresno County juvenile referee found three children dependents under Welfare and Institutions Code section 300. The complaint was premised

upon allegations of sexual abuse of the two daughters by the father and physical abuse of all three children by the mother. Ms. Irene H., the mother, raises two errors on appeal.

First, the referee denied Ms. H.'s motion for continuance through her court-appointed attorney with the public defender's office. Counsel represented that Ms. H. had just received a notice of the hearing the day before and could not reach Fresno from Los Angeles.

Second, the referee made his findings based solely on child welfare worker reports consisting of double hearsay statements allegedly made by the children.

Ms. H. has been living in Los Angeles County throughout the hearings and the appeal. Two months after she perfected the appeal, the referee transferred the case to Los Angeles County. This court requested further briefing on the issues of whether we still retain jurisdiction and venue after the referee's transfer order.

### FACTS AND PROCEEDINGS BELOW

On August 22, 1985, the People filed dependency petitions against the parents of three children for violations of Welfare and Institutions Code section 300, subdivision (a) and (b). At the time the petitions were filed, the parents' whereabouts were unknown.

After a detention hearing on August 26, 1985, the children were placed in charge of the department of social services. They were left under the supervision of their parental aunt where they remain today.

Two pretrial conference hearings were held. Ms. H. attended the first conference on September 3, 1985, and was appointed counsel from the public defender's office. She missed the second conference on September 10, which set the adjudicatory disposition hearing for October 1. Ms. H. and her counsel were given only four days written notice of the disposition hearing on October 1. The deputy public defender, however, was personally present and was notified on September 10 of the disposition hearing date of October 1.

Ms. H. missed the October 1 hearing. At the request of the district attorney's office, the case was continued to October 15. Ms. H. was sent notice by certified mail, return receipt requested, on October 4, 1985, 11 days before the disposition hearing.

There was a change of deputy public defenders and district attorneys between September and October. Deputy Public Defender Berdinella was replaced by Medina. Deputy District Attorney Delcerro was replaced by Mason.

Ms. H. failed to appear at the disposition hearing on October 15. Deputy Public Defender Medina made the following motion to continue the hearing: "The mother, [Ms. H.], did phone me approximately at two p.m. this afternoon. That's the first contact I have—anyone from our office has had with her since the detention hearing. She indicated that she had just received notice, I guess it would be from the Clerk, regarding today's hearing yesterday, and she was unable to appear today. She's currently residing in—somewhere in Los Angeles County. She wanted to appear in court, and she asked that I continue the case for her so that she could appear, so that I would be able to consult with her on the case. Should the court grant the continuance, I suggest a two week continuance."

In denying the motion, the trial court observed: "The court does note that the mother was present in court on September 3, 1985. It was a trial confirmation hearing. Court then continued the matter over for further confirmation hearing on September 10, 1985. On that date, September 10, 1985, mother was not present in court, and I set the matter over for a no-go adjudication/disposition hearing on October 1, 1985. On that date the mother did not appear. However, the court did continue the matter at the request of the minor's attorney, set the matter for hearing today, October 15, 1985.

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Well, the court is going to deny the request to continue the matter. I think the mother has you—has a responsibility to be present at all the hearings. She was present over a month ago, has done nothing to further her interest by contacting the Public Defender's Office."

The trial court made its final disposition relying exclusively upon the reports submitted by the department of social services. The allegations of the complaint were found to be true by a preponderance of the evidence. The children were committed to the custody of the department of social services and were placed in the home of a paternal aunt. The parties were to attempt a reunification plan.

In January 1986, the referee transferred the three cases to Los Angeles County. The county counsel then moved to be relieved from filing the respondent's brief. This court denied the respondent's motion to be relieved from briefing. Our court also requested further briefing as to whether it

retained jurisdiction and venue of this appeal after the referee's transfer of the underlying actions to Los Angeles.

DISCUSSION

I.

APPELLATE JURISDICTION AND APPEAL.

Welfare and Institutions Code sections 375 and 750 authorize the transfer of dependency cases to the county of a parent's residence regardless of the fact that the parent has lost control and custody of the child. Jurisdiction can be transferred to a parent's county of residence even though the children live in or are wards of a different county than where the parent resides. Further procedures for executing a transfer are set forth in California Rules of Court, rule 1381.

These statutes reverse the holding in *In re Grimmer* (1968) 259 Cal. App.2d 840 [66 Cal. Rptr. 816] which found that once a county created a wardship it kept jurisdiction over the child despite the parent's change in residence.

We have no record of the January proceedings transferring the underlying actions to Los Angeles. Although one may question why the transfer was not made sooner, the referee had jurisdiction to hear the case. Under Welfare and Institutions Code sections 327 and 651, jurisdiction and venue are proper in the county in which the children reside or in which they are found. (See 6 Witkin, Summary of Cal. Law (8th ed. 1984 pocket supp.) Parent and Child, § 365A, pp. 489-490.) The referee properly retained jurisdiction to hear the cases and then to transfer them to Los Angeles, but there is a statutory tension between vesting jurisdiction with the child's locus and the parent's residence.

Does the referee's transfer affect this court's jurisdiction to hear the case? The county counsel's letter brief answers this question positively without reference to a single authority.

Counsel for Ms. H. reasons that the only act necessary to create jurisdiction in this court is the timely filing of a notice of appeal raising a properly appealable issue. (Citing *Estate of Hanley* (1943) 23 Cal.2d 120, 122-123 [142 P.2d 423, 149 A.L.R. 1250].) Appeal is commenced by filing notice in the court whose order is to be appealed under rule 1 (a) of California Rules of Court. An appeal from Fresno Superior Court properly lies with this court. (Gov. Code, §§ 69100, subd. (e), 69105.)

Following *National Kinney* v. *Workers' Comp. Appeals Bd.* (1980) 113 Cal.App.3d 203 [169 Cal.Rptr. 801], Ms. H.'s counsel argues that once jurisdiction vests in an appellate court, the issue then becomes one of venue: "Thus, the filing of petition for writ of review in the incorrect appellate district, where the petition is otherwise timely filed, does not deprive that court of jurisdiction. Upon discovery of the error, the appropriate procedure is for that appellate district to request the Supreme Court to transfer the matter to the correct appellate district. (Cal. Const., art. VI, § 12; Cal. Rules of Court, rules 1, 20.) This was the procedure followed herein. Once so transferred by order of the Supreme Court the 'court to which a cause is transferred has jurisdiction.' " (113 Cal.App.3d at p. 209.)

The *National Kinney* decision follows *Argonaut Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 247 Cal.App.2d 669 [55 Cal.Rptr. 810]. Both decisions dealt with workers' compensation appeals under Labor Code section 5950 which specifically requires appellants to file appeals from the board to the appellate district of their residence.

Appeals from superior court are filed in that court and automatically sent to the correct appellate district pursuant to rule 1 (a) of California Rules of Court. Appeals in worker compensation cases are governed by a specific statutory mechanism that uses a specific residential requirement to create venue within the appellate court system.

Custody appeals are generally treated like all civil appeals. (Welf. & Inst. Code, § 395.) Although dependency appeals are to be treated like regular appeals, dependency cases are unlike other cases that reach a final resolution before appeal. Dependency cases continue with review hearings and reunification plans. During an appeal, parties may leave a jurisdiction and a case may be transferred. Here the court had jurisdiction to hear and to transfer the underlying cases.

*Argonaut* and *National Kinney* involved analogous problems in the context of worker compensation cases. In those cases, insurance carriers were not residents of the appellate districts in which they filed appeals. The appellate courts in each case retained venue over both cases despite the requirement of Labor Code section 5950 that the appellant had to reside within that particular district. *Argonaut* nevertheless found venue and jurisdiction were properly within the Fourth Appellate District: "Jurisdiction of this court to consider this petition for a writ of review was questioned initially on the ground that petitioner is not a resident of this appellate district within the meaning of section 5950 of the Labor Code. . . . Specifically, the employer, the injured employee, and the local office of petitioner are all located within this district. Moreover, the injury which gave rise to

the claim and the original proceedings for disposition of the applicant's claim occurred within this district. Such a combination of factors is sufficient to confer jurisdiction and venue in this tribunal." (247 Cal.App.2d at pp. 671-672.)

*Argonaut* uses an equitable approach in resolving venue questions. Like the insurance companies, Ms. H. perfected an appeal in an appellate district in which she was not a legal resident. Like the worker's compensation appeals, however, most of the parties live in this appellate district. The guardian aunt and the three children live here and the trial court resides within this district.

Fundamentally, and most importantly, any transfer of this action to the Second Appellate District would cause further delay of the appeal. Before the transfer could occur, this court would have to petition the California Supreme Court for transfer. (Cal. Const., art. VI, § 12; Cal. Rules of Court, rule 20; *National Kinney* v. *Workers' Comp. Appeals Bd., supra,* 113 Cal.App.3d at p. 209.)

Dependency appeals have the highest priority. (*In re Joseph B.* (1983) 34 Cal.3d 952, 959 [196 Cal.Rptr. 348, 671 P.2d 852]; *Abdullah B.* v. *Superior Court* (1982) 135 Cal.App.3d 838, 844 [185 Cal. Rptr. 784]; Welf. & Inst. Code, § 800; Cal. Rules of Court, rule 39 (e).) Although a transfer of venue to the Second District would still leave this case on a priority status there, the transferred appeal would be further delayed and would be left at the bottom of that court's priority list. This case would not even reach that court's priority list until the California Supreme Court ruled on this court's motion to change venue.

This would thwart the expeditious resolution of this class of cases. ▆ The unequivocal policy and purpose of juvenile law is an expeditious resolution of issues. ▆ The tragic results of the three and one-half year delay between adoption and final appellate determination in *In re Cheryl E.* (1984) 161 Cal.App.3d 587 [207 Cal.Rptr. 728], a case in which the natural parents were kept from an infant bonded to its adoptive parents, are heart rending. From an appellate standpoint, and given the policy of expediency in juvenile cases, this action should not be transferred to another appellate district.

This court's decision will still be binding on the Los Angeles Superior Court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

### II., III.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

---

*See footnote on page 399, *ante.*

## Decision

The judgment is affirmed.

Brown (G. A.), P. J., and Hamlin, J., concurred.